## ESTATE OF JOHN BOARDMAN, DECEASED.

APPEAL FROM FORNANDER, CIRCUIT JUDGE, SITTING IN PRO-

BATE.

APRIL TERM, 1884.

JUDD, C. J.; McCULLY and AUSTIN, JJ.

A testator devised property to his daughter, to be held in trust for her by his executors, free from control of her husband, should she marry. At the testator's death, the daughter was married.

Held, that a valid trust, to the separate use of the daughter, vested in the executors, to pay the income from the property to the daughter during her coverture.

Decree of the lower Court reversed.

OPINION OF THE COURT, BY AUSTIN, J.

THIS matter comes here on appeal from the decree of distribution made by Hon. A. Fornander, Circuit Judge, Maui.

The question submitted is the construction of the second clause of the will of Boardman, which is as follows :

"I give and bequeath to my daughter Amy Laura one half of my land in Makawao, of about 400 acres, one large bedstead and bedding, one bureau, one table, one camphor trunk, the small clock, and one half of all my money and other personal property, with the same exceptions as in article 1st. This property to be held in trust for her by my executors, for her own use, free from the control or interference of her husband, should she marry."

The will is dated September 25, 1876, and John Boardman died on or about May 5, 1883. At the date of the will his daughter Amy Laura, named in the clause quoted, was unmarried. At the death of the testator she was married, and was Mrs. Laura King, wife of G. M. R. King. Mr. and Mrs. King claim that she is entitled to the immediate conveyance of the real estate, and distribution of the personal property left her by the will.

The Circuit Judge has so decided, and the executors appeal.

The English statute of uses, which is substantially re-enacted in most of the United States, is not made the law here. If, however, its provisions are deemed reasonable, they may be adopted by our Courts.

See Sections 14 and 823, Civil Code.

The effect of the statute is shown by the following illustration : "If A grants or bequeaths lands to B and his heirs, in trust for C and his heirs, the trustee B will take nothing in the land, but the legal title and the beneficial use will vest immediately in C."

See Perry on Trusts, Sec. 298.

In a plain case like this we think the statute is wise, and that it should be followed here.

To the application of the statute in England and elsewhere, there are certain well-defined exceptions, or rather rules of construction, which limit the effect of the statute. One rule "relates to special or active trusts which were never within the purview of the statute. Therefore, if any agency, duty or power be imposed on the trustee, as by a limitation to a trustee and his heirs to pay the rents, or to convey the estate, or if any control is to be exercised or duty performed by the trustee in applying the rents to a person's maintenance, or if the purpose of the trust is to protect the estate for a given time, or until the death of some one—in all these, and in other like cases, the operation of the statute is excluded, and the trusts or uses remain mere equitable estates." Id. Sec. 305.

Under this rule it is well settled that equity will permit a stranger to give and settle property upon a married woman, to her sole and separate use, free from the interference and control of her husband. Id. Sec. 346.

To create such a trust, no particular form of words is necessary, but the intention to exclude the husband must be unequivocal, and when the meaning is clear the Court shall carry the intention into effect.

Id. Sections 310, 647, 648 and cases cited.

At Sec. 652, Perry on Trusts declares : "As before said, if property is conveyed to a single woman for her sole and separate use, she has the same control of it before marriage as if it was given to her absolutely ; but the limitation to her sole and separate use will take effect upon her marriage."

This view is sustained by many authorities in England and in the United States.

It is also held in many cases that the trust applies to successive covertures, where the intention so to apply it is clear, though at the death of the first husband the widow has an absolute power of disposal.

See id. Sec. 653; *Shirley vs. Shirley*, 9 Paige, 364. See also Bishop on Married Women, Sections 814, 815, 816, 817, 821, 822 and 823.

At Sec. 814, this writer says : "In legal principle, and on the prevailing authorities, both English and American, it is competent to limit an estate to the separate use of a woman yet unmarried, where no particular marriage is contemplated, and on her afterwards becoming covert, she will hold it as her separate estate, free from the control of her husband." See also Perry on Trusts, Sec. 671. Such doctrines, if adopted, would enforce the trust in this case.

The counsel for respondents, however, as against these views, relies upon cases decided in Pennsylvania, and cited in Note 4 to section 652 of Perry on Trusts, where it is said that : "In that State, to create a valid trust for the sole and separate use of a woman, it is necessary that she should be married at the time, or that she should be in the immediate contemplation of a marriage." See also Perry on Trusts, Sec. 810, to the same effect. And the respondents' counsel claims that this applies to the case in hand, and is more reasonable than the other doctrine, and leads to the abrogation of the supposed trust.

We are not now prepared to say that the respondents' counsel is wrong, nor do we think it necessary to do so in order to decide the question before us.

The trust, if any, declared in this case is by will. The provisions of a will are ordinarily " ambulatory " until the death of the testator.

See Perry on Trusts, Sec. 92·

The rights of the executors as such, and as trustees, vested at the death of the testator.

Redfield on Wills, p. 126, Vol. 3.

The trust in this case, if valid, is strictly of a testamentary

character, and could not possibly arise or become vested until the death of the testator.

Redfield on Wills, Vol. 3, p. 482.

In the absence of express provisions showing otherwise, a will is to be considered with reference to the facts and circumstances existing at the death of the testator.

See Redfield on Wills, Vol. 1, pp. 379, 380, 413 and 414.

These are familiar and undisputed principles, and doubtless the rights of the devisee, legatee and trustees in this case became vested at the testator's death, and not before. At that time the respondent was a married woman, and the contingency mentioned in the will had occurred. The will speaks of her rights as they were affected by her condition at the time of the testator's death. If, then, the words used were sufficient to constitute a trust to the separate use of a married woman, the trust claimed by the appellant is established.

On looking at the language used in the will, we have no doubt it is amply sufficient to establish such a trust.

See Perry on Trusts, Sec. 648 and the instances there cited.

Holding it to be a trust, is in full accord with the decisions in the Pennsylvania cases, and with *Hasslocher vs. Robinson's Executors*, 3 Hawn., 802. It is a trust in favor of a married woman, in strict observance of the declared intention of the testator.

The executors retain the property invested with the trust to pay the income, rents and profits to the *cestui qui trust* during her coverture.

The decree must be reversed with costs.

*F. M. Hatch*, for executors.

*P. Neumann*, for Mrs. King.

Honolulu, May 26, 1884.