HAWAIIAN TRUST & INVESTMENT COMPANY, LIM-
ITED, (A CORPORATION), *v.* ANNIE BARTON,
HELEN A. DUNNING, A. V. GEAR AND T. F.
LANSING (DOING BUSINESS UNDER THE FIRM
NAME OF GEAR, LANSING & COMPANY), J. OS-
WALD LUTTED, J. J. SULLIVAN AND J. BUCK-
LEY, (THE LAST TWO NAMED DOING BUSINESS
UNDER THE FIRM NAME OF SULLIVAN &
BUCKLEY).

ERROR TO CIRCUIT COURT, FIRST CIRCUIT.

ARGUED NOVEMBER 9, 1904.    DECIDED DECEMBER 5, 1904.

FREAR, C.J., HARTWELL, J., AND CIRCUIT JUDGE ROBINSON IN
PLACE OF HATCH, J.

STATUTE OF USES—*in force in Hawaii as early as 1855.*

A conveyance made in 1862 to A., being trustee under the will of
R. W. Holt "and his successors in trust for the use and benefit of
/the legatees named in the last will and testament of Robert W.
Holt, deceased, forever," vests the legal title in the testator's
daughter Elizabeth, to whom the will devised an undivided fourth
of the estate, the statute of uses at the date of that deed being law
in Hawaii under decisions in *Kane v. Perry*, 3 Haw. 663, and *Kalae-
okekoi v. Kahele*, 7 Ib. 147.

STATUTE OF FRAUDS—*parol partition—memorandum.*

Our statute of frauds, not enacting the first section of statute 29
Charles II., does not prevent a parol partition of land, but in this
case held: A sufficient memorandum was signed by the parties in
interest to show a partition.

CERTIFICATE OF ACKNOWLEDGMENT OF DEED—*not defective by omitting the
statutory words "for the uses and purposes therein named."*

The certificate of acknowledgment of a deed is substantially in

the form required by statute, although omitting the words "for the uses and purposes therein named" after the words "that he executed the same freely and voluntarily."

EVIDENCE—*mental incapacity of grantor, records of California adjudication of insanity and order confining in an insane asylum.*

Records of a superior court of California showing that on May 24, 1888, G. A. A., the grantor of deed of October 31, 1898, under which plaintiff claimed, was adjudicated to be insane and ordered by the judge to be confined in the insane asylum, and that in 1900 the judge refused to restore said G. A. A. to capacity, and evidence that by the law of California in 1888 and 1890 a person adjudged insane and committed to an insane asylum could not convey land are inadmissible for the purpose of showing the grantor's incapacity to make the deed.

## OPINION OF THE COURT BY HARTWELL, J.

The plaintiff brought an action of ejectment and obtained a verdict in its favor for an undivided fourth of certain land and premises in Honolulu known as the Canton Hotel, basing its claim on a conveyance from George A. Aldrich dated October 31, 1898, who claimed the property by inheritance from his mother, Elizabeth M. Aldrich, one of the devisees under the will of R. W. Holt, and who died intestate leaving four children including the son. By Holt's will his widow received an annuity of $800 for life. One-fourth of all the rest of his property went to each of his three sons for life over to their respective heirs. The remaining fourth was devised directly to his said daughter. The land was patented by Royal Patent No. 647 dated July 19, 1852, to James Robinson, Robert Lawrence and Robert W. Holt, who owned the land as partnership property. The executor of Holt's will filed a bill in equity against the surviving partners praying for an order of sale of the real estate of the firm and that the proceeds thereof be divided. The surviving partners Robinson and Lawrence in their answer joined in the petition for the order of sale and division of proceeds. The order of sale and division was granted October 18, 1862. November 22, 1862, the parties in said cause by their attorneys

reported that the sale had been made as ordered, and that the parcels of land which in the petition for order of sale were numbered respectively from 1 to 19, had been sold separately for the various sums named in the report, aggregating $26,680, the executor having purchased them "as trustee under said will for the legatees named in the said will;" the report setting forth that "upon consultation with the respective parties previous to the day of sale it was agreed between them and we were instructed to cause the portions of the said premises specially described in the order of sale as numbers 1, 3, 4 and 5 to be sold together, and also numbers 6 and 7 to be sold together, and also numbers 8, 9 and 10 to be sold together, and also numbers 15 and 19 to be sold together, it being agreed between the said parties that it was for their respective interests that they should be sold." The sale was confirmed by order of Justice Robertson December 3, 1862, the order requiring "the parties and attorneys to make the conveyances necessary for completing the said sale pursuant to the order of sale heretofore made in this cause." December 11, 1862, the attorneys of the said parties filed their report of distribution of the proceeds of the sale, showing that each of the surviving partners had received one-third thereof, amounting to $8,674.56, and that the executor had received the same sum for the Holt estate. November 22, 1862, an indenture was executed between "William A. Aldrich, executor of the last will and testament of Robert W. Holt, plaintiff or complainant in the suit of chancery hereinafter referred to, and James Robinson and Robert Lawrence, defendants in the said suit of the first part, and William A. Aldrich, executor of R. W. Holt, deceased, and his successors in trust for the use and benefit of the legatees named and referred to in the last will and testament of the said Robert W. Holt of the second part," reciting that at a sale at public auction of partnership real estate ordered by the court in said cause to be sold, and which on comparison with the order of sale appears to include the parcels of land numbered in said order 1, 2, 3, 4, 5, 6, 7 and 14, the last numbered parcel being described as the Canton Hotel

premises, the executor became the purchaser for the sum of $14,570, and that the parties of the second part in consideration of the receipt of that sum by them granted, bargained, sold, aliened, released, conveyed and confirmed the said eight parcels "unto the said party of the second part and his successors in trust for the use and benefit of the legatees named and referred to in the last will and testament of Robert W. Holt, deceased, forever." The records of the court show that October 31, 1863, the executor with R. G. Davis and the three sons of the testator, being all the devisees mentioned in his will, with the exception of his daughter, appeared before Mr. Justice Robertson, who made the order of sale, and that the executor "presented a statement of proposed division of the estate of Mr. Holt to separate the share of Mrs. Aldrich from that of the other devisees;" that "the sons of Mr. Holt declined to accept the Canton Hotel as set off to them in the division as presented," and that "under the circumstances the court thought wise to offer the Canton Hotel premises for sale at auction at the upset price of $2500," and that "ten days previous public notice be given of the time and place of sale, it being understood that if the bid of $2500 is not obtained then the property shall be retained and form a part of the estate;" that November 18, 1863, R. G. Davis and James, John and Owen Holt being present, the executor reported that "the Canton Hotel premises were offered for sale according to an order of sale of this court on Saturday the 14th instant, and that it was not sold;" that he was "willing that the Canton Hotel premises shall stand aside as a part of the share of Mrs. Aldrich at the valuation of $2500, at which price it has been offered for sale by order of the court. This proposition is assented to by the devisees who are present, viz., James R. and Owen J. Holt;" and that at a later hour of the same day the executor "presented to the court a statement of division of the estate of R. W. Holt, deceased, showing the value of Mrs. Aldrich's ¼ on the first August, 1863, to be $20,817.85. The division as proposed by the executor is agreed to by James R., Owen J. and John D. Holt, the sons, devisees of the decedent,

and by Mrs. Aldrich, all of whom have signed the statement of division in token of their assent," and that "the document is ordered to be marked AA and placed on file." The statement showed the items, "Canton Hotel premises $2500," and after footing up the investments, amounting to $83,271.30, "¼ of above is due to Mrs. A., say $20,817.85," and was signed by the executor, E. M. Aldrich, James R. Holt, Owen J. Holt and John D. Holt.

The defendants excepted to the admission in evidence of the deed of October 31, 1898, on the ground that the certificate of acknowledgment omitted to certify that it was executed by the grantor "for the uses and purposes therein set forth," which are in the form of certificate given by the statute; and also excepted to the refusal of the court to allow in evidence an authenticated copy of a record of the superior court of the city and county of San Francisco showing that George A. Aldrich, on May 24, 1888, was ordered by the judge of the court to be confined in the state insane asylum at Napa, on the ground that "he is insane and is so far disordered in mind as to endanger health, person or property, and is not a case of idiocy, imbecility or simple feebleness of mind, or old case of harmless dementia, or of any class of incurable or harmless insanity or a case of delirium tremens;" and also to the refusal of the court to allow in evidence an authenticated copy of the record of the same court showing a refusal in 1900 to restore to capacity George A. Aldrich; or to allow the defendants to show by the evidence of C. W. Ashford that under the law of California in 1888 and 1890 a person adjudged insane and committed to an insane asylum could not convey land; and that any conveyances or contracts executed under such circumstances and conditions were absolutely void; and further to the refusal of the court to direct a verdict for the defendants on the ground that the plaintiff had shown no title in itself; and to the refusal of the court to grant the defendants' motion for judgment *non obstante* on the same ground.

If the deed ought not to have been admitted in evidence with-

out proof, owing to the defective certificate of acknowledgment by the grantor, or if the evidence offered to show the grantor's insanity was admissible, or if the title to the land was in the executor and not in Mrs. Aldrich, or if the proceedings referred to did not constitute sufficient setting apart of this property to Mrs. Aldrich in severalty, then the verdict cannot be sustained in law.

The plaintiff contends that the legal title was in Mrs. Aldrich, and that a parol partition was made which was sufficient in law under our statute; that the certificate of acknowledgment was radically defective but was substantially in the form required by statute; that a conveyance by an insane person is not absolutely void but merely voidable and cannot be attacked collaterally; also that the evidence of the grantor's insanity was incompetent.

At a former trial of this case the plaintiff was nonsuited on motion of the defendants on the grounds that the plaintiff had not proved title in itself and could only sue as trustee, joining the *cestui que trust,* Aldrich having conveyed the property to the plaintiff as trustee. The order of nonsuit was reversed and a new trial was ordered upon the sole ground, being the only question argued by the defendant, that the plaintiff was not required to sue as trustee or to join the *cestui que trust.* 14 Haw. 681. The plaintiff claims that the defendant is estopped by that judgment from asserting that there is no evidence to support the verdict, and says the evidence at the second trial included all the evidence at the first trial and more. We do not know this, for the evidence at the former trial is not before us in these exceptions. This contention therefore cannot be sustained.

As to the failure of the certificate of acknowledgment to state, not only as it did, that the grantor "personally appeared before" the acknowledging officer and was "known to him to be the same person who executed the foregoing deed," and that "he executed the same freely and voluntarily," but also that he executed the deed "for the uses and purposes therein set forth," we do not

think that the omitted words are a matter of substance. The main object of a certificate is to guard the public against false impersonation and to make sure that the grantor executed the deed. Everyone knows that the written form of these certificates often expresses much more than is actually said, which is apt to be something like this: "This is your deed?" or "Your signature?" or "You acknowledge that you have signed this?" Executing a deed implies that it is executed for the uses and purposes it expresses. It is better to follow the form prescribed in the statute in order to avoid objections to the title, which may involve harmful delays and expense, but as between the conflicting decisions of the Arkansas and Texas courts on the subject which are cited before us, we prefer the view taken in the Texas decision, which is based on the ground that the statement of the purpose is not conclusive. Our statute also provides that "neither the certificate of acknowledgment nor the proof of any instrument shall be conclusive, but may be rebutted and the force and effect thereof may be contested by any party affected thereby." Sec. 1849, C. L.

We think that the adjudication of the California court of the insanity of the grantor and its order for confining the grantor in the insane asylum were not admissible as evidence in this case. No notice appears to have been given to Aldrich in this case that he was represented to be insane, or that the court was to pass upon the question of his insanity. The record shows that Aldrich was "brought before" the judge "for examination on the charge of insanity," and that after the judge had heard the testimony of certain witnesses and satisfied himself "on personal examination" that Aldrich was insane, he made the order for his confinement at the insane asylum. Our statute requires that before appointing a guardian of the person and estate of an insane person "the judge shall cause notice to be given to the supposed insane person of the time and place for hearing the case not less than fourteen days before the time so appointed." Probably the jurisdiction of the California court for committing a person to the insane asylum on complaint and

without notice to the person represented to be insane may be like that given by our statute, which allows this to be done on the ground that "the public safety requires his restraint until he becomes of sane mind." Sec. 646, *Ib.* But an adjudication of insanity cannot have the effect of making a deed by the insane person void unless the adjudication shall have been made after notice given, and unless a guardian shall have been appointed to have charge of the property of the person adjudicated to be insane.

"Any judgment or decree that a person is *non compos* or appointing a guardian for that cause without notice is absolutely void." *Hathaway v. Clark,* 5 Pick., 490. It is immaterial whether or not these records are to be regarded as those of a court of a foreign country as they relate to proceedings in 1888, prior to the annexation of Hawaii. They are not evidence tending in any way to show that Aldrich at the date of his deed in 1898 was mentally incompetent.

The conveyance by the surviving partners and the executor to the executor "and his successors in trust for the use and benefit · of the legatees" would create an active trust in respect of the life estate of each of the testator's sons, since the will requires "the income of the same to be paid to him by my executor hereinafter named for his use and support for the term of his natural life;" but in respect of the estate devised to the daughter Elizabeth and her heirs and assigns forever there would be no active duties for the trustee to perform, and under the statute of uses of 27 H. VIII. the legal effect of the conveyance would be to vest the fee in the daughter, her equitable estate being converted by force of that statute into a legal estate. 1 Perry on Trusts, Sec. 298.

"And so the stat. of Henry VIII., after reciting the various inconveniences before mentioned, and many others, enacts, that 'when any person shall be *seised* of lands, &c., to the use, confidence, or trust of any other person or body politic, the person or corporation entitled to the use in fee simple, fee tail, for life, or years, or otherwise, shall from thenceforth stand and be

seised or possessed of the land, &c., of and in the like estates as.
they have in the use, trust, or confidence; and that the estate,
of the person so seised to uses shall be deemed to be in him or
them that have the use, in such quality, manner, form and condi--
tion, as they had before in the use.' The statute thus *executes*
the use, as our lawyers term it; that is, it conveys the possession
to the use, and transfers the use into possession; thereby making:
*cestui que* use complete owner of the lands and tenements, as well
at law as in equity." 2 Black. Com., 333. It is therefore essen-
tial to say whether the statute was law in Hawaii at the date of
this conveyance. "It may not be a fair inference that the doc-
trine of uses would be inapplicable in any state where they are
not declared not to exist, because no case has arisen in the courts
of the state to test the question, or because a form of a deed not
known under the statute of uses may have been declared by the
statute of a state sufficient to convey lands." 2 Wash. on Real
Prop., 481. In *Est. of Boardman,* 5 Haw. 146 (1884), a devise
to the testator's daughter of land "to be held in trust for her by
my executor" was held to import an active trust and not to be
within the statute. The court, after stating the effect of the
statute in vesting the legal title in the beneficiary in certain
cases, said: "In a case like this we think the statute is wise and
that it should be followed here." In *Kidwell v. Godfrey,* 14
Haw. 138 (1902), the court said: "Whether or not the statute
of uses is in force in this Territory we need not say. The trust
in question is not one within the operation of the statute."
These cases do not recognize the significance of the decisions
in *Kane v. Perry,* 3 Haw. 663 (1876), and in *Kalaeokekoi v.
Kahele,* 7 *Ib.* 147 (1887). In the former of these cases the
legal title was held to be in M. in a royal patent based on a land
award dated January 8, 1855, issued to "K. for M." The·
defendant in that case filed a plea in bar, one of the grounds of
which plea was that "in law and equity and by force of said
patent to K. for M. and her heirs and assigns forever the said
M. was entitled to the fee simple thereof." The following:

extracts from the defendant's brief, which is on the files of the case, show that the question was clearly presented to the court:

"The statute of uses has not been enacted here, or else this question could not have been raised. But our conveyancing has undoubtedly gone upon the theory that it is law here. The modern deeds, based on the doctrines which have flowed from that statute, have always been used here. The wills and settlements, based on like doctrines, have united to form a basis of the most important titles in the kingdom. The statute gives this court the right to adopt the law of other countries, which is consistent with our own laws and usages, and not opposed to justice and reason. All these elements are now before the court, to authorize its declaring that the statute of uses is part of the law of the land. * * *

"A simple trust to A for B, allowing or requiring no discretionary power in A, clearly should give the fee to B in law; especially in this court, exercising full equitable jurisdiction. * * *

"It is believed that the court will not come to a conclusion which is at variance with the uniform practice of transferring land titles to uses, which has certainly never been contemplated by parties dealing in land titles, and which would plunge the landed estates of the kingdom into a sea of uncertainty and litigation. It is a case where common consent and usage have established the law on the subject, merely requiring the recognition of the court. * * * "

The court sustained the plea on this ground, saying that if "K. was trustee for M., the trustee or his heirs could not eject M. or her heirs or assigns from the occupation of the land, since he held only for her and her heirs." In the second case above mentioned the trial judge in a suit in equity had made a ruling to the same effect concerning a similarly worded patent. The adjudication in the equity suit was held to bar an action of ejectment in which the plaintiff claimed under the trustee. The law of Hawaii concerning the statute of uses must be regarded as having been settled as early as 1855, the date of the land

·award in *Kane v. Perry.* According to this conclusion the fee · of an undivided fourth of the land conveyed to W. A. Aldrich ·was in Elizabeth, the testator's daughter.

As to the setting apart of the Canton Hotel premises to the testator's daughter Elizabeth Aldrich in severalty, the memorandum signed by the executor and by the devisees under the will ·clearly shows that it was agreed that this should be done, and that the hotel property should be a portion of Elizabeth's share of the estate at a valuation of $2500; and it appears by the record also that this transaction was approved by the court. This ·was a sufficient setting apart of that property under our statute of frauds, which does not contain the first section of the English ·statute of frauds or its equivalent. The section referred to is as follows:

"All leases estates interests of freehold or termes of yeares · or any uncertaine interest of in to or out of any messuages ·mannours lands tenements or hereditaments *made or created by livery and seizin onely or by parol* and not *putt in writeing and signed* by the parties makeing or creating the same or their agents thereunto lawfully authorized by writeing, shall have the force and effect of leases or estates at will onely and shall not either in law or equity be deemed or taken to have any other or greater force or effect, any consideration for makeing any such parole leases or estates or any former law or usage to the contrary notwithstanding."

Similar provisions frequently appear in the statutes of the several states, as for instance, in the Massachusetts statute, viz.:

"Estates or interests in lands, created or conveyed without an instrument in writing signed by the grantor or his attorney, shall have the force and effect of estates at will only, and no estate or interest in lands shall be assigned, granted, or surrendered, unless by a writing signed as aforesaid, or by the operation of law." Mass. Genl. St., Ch. 89, Sec. 2.

"A voluntary partition of lands could, as we have shown, be made by parol at the common law between parceners and also ·between tenants in common. But, according to a slight preponderance of American cases, and to a decided majority of the ·English authorities, the statute of frauds now interposes an

insuperable obstacle to a valid parol partition." Freeman on Partition, Sec. 397.

While holding that in this case there was a sufficient partition under our statute, it is also evident that the same theory was applied to the division of the lands of the deceased partner among those entitled to it under the will which was applied by the court in ordering a sale of the partnership lands for the purpose of dividing the proceeds between the surviving partners and the receipts of the estate of the deceased partner. The sales were apparently *pro forma,* the different interests agreeing on the price for each parcel and who should take it on that valuation, in making up the respective partnership shares.

The exceptions are overruled.

*Kinney, McClanahan & Cooper* and *S. H. Derby* for plaintiff.
*Robertson & Wilder* and *Holmes & Stanley* for defendants.


## CONCURRING OPINION OF FREAR, C.J.

I concur in the foregoing conclusion and in general with the reasoning on which it is based, but desire to make my position a little clearer on the two minor points, that of the certificate of acknowledgment and that of the judgment of insanity. I think that the statute might have made the clause omitted from the certificate essential, but that it did not. Sections 1839, 1840, 1841, 1847, of the Civil Laws, which set forth what an acknowledgment and certificate thereof shall consist of, say nothing of the "uses and purposes," and section 1842, which alone contains those words, provides merely that the "form" shall be "substantially" as set out in that section. This, taken with the nature of the omitted words and the purposes of an acknowledgment as set forth in the foregoing opinion, leads me to conclude that the certificate was not fatally defective. I think the judgment of insanity was inadmissible (1) because the question was not the same in the California proceeding as in this proceeding, that being a proceeding to determine whether it was safe for the accused to be at large, and not to determine whether he had suffi-

cient mind to make a deed, etc., or whether he needed a guardiau of his property, and (2) the parties were different. That was not a proceeding in rem with notice by publication or otherwise to the world. *Leggate v. Clark,* 111 Mass. 308.