## AKAMINE & SONS, LTD., A HAWAII CORPORATION, AND HAWAII NATIONAL BANK, HONOLULU v. AMERICAN SECURITY BANK.

### No. 4575.

APRIL 25, 1968.

RICHARDSON, C.J., MIZUHA, ABE AND LEVINSON, JJ., AND CIRCUIT JUDGE LAURETA IN PLACE OF MARUMOTO, J., DISQUALIFIED.

OPINION OF THE COURT BY LEVINSON, J.

This action was instituted by Akamine & Sons, Ltd. to enjoin a sale by American Security Bank under a power of sale given in a mortgage by the corporation to American Security. Hawaii National Bank intervened. After the trial court denied the injunction, the only issue remaining in the case was the priority of the two banks to the proceeds from the sale. The trial court awarded the entire proceeds to American Security, and Hawaii National appealed. Akamine & Sons, Ltd. has not appealed.

On August 2, 1960, Val Super Market, Ltd., a corporation owned almost completely by the Akamine family, executed a

chattel mortgage and agreement with American Security under which American Security agreed to lend Val an aggregate amount of $190,000. American Security retained the right to terminate the agreement as to any amounts not drawn at any time. As security for the loan, Val gave American Security a mortgage on

> All of the goods, wares, merchandise, furniture, fixtures and equipment, . . . together with additions, improvements, purchases and substitutions thereto and thereof which are now or may hereafter be made, whether the same be kept at the Mortgagor's principal place of business and place of storage . . .

The agreement also contained the provision that Akamine & Sons, Ltd.,

> in consideration of the promise on the part of the Mortgagor as aforesaid and in order to induce the Mortgagee to make such loans, does hereby covenant and agree to and with the Mortgagee that it will guarantee and indorse any and all promissory note or notes evidencing any advances made to the Mortgagor . . . and further agrees that it will guarantee to repay all of said sums according to the terms of the said notes evidencing such loans, whether or not it has indorsed any of said notes . . . .

The agreement was signed by two officers of Akamine & Sons, Ltd. Although the record is unclear as to how and when the money was advanced, by May 1, 1962, Val had borrowed the full $190,000, as evidenced by its promissory note for that amount. The note stated that it was secured by the chattel mortgage and agreement, the terms of which were incorporated in the note. The note was not signed by representatives of Akamine & Sons, Ltd. although Sotaro and George Akamine signed as officers of Val.

On September 26, 1960, Akamine & Sons, Ltd. borrowed $250,000 from American Security. The debt was evidenced by a promissory note and secured by a mortgage on several parcels of real property. The mortgage provided that it would become void only after the mortgagor had discharged the obligation on the note for the $250,000 loan

and shall discharge any and all obligations that now are or hereafter may be or become owing directly or contingently by the Mortgagor to the Mortgagee on any and every account whether or not the same are mature, of which obligations the books of the Mortgagee shall be prima facie evidence and which obligations it is agreed 'by these presents are and shall be secured as additional charges against all the property hereby mortgaged . . . .

This mortgage made no specific reference to the August 2 chattel mortgage and agreement.

The September 26 mortgage stated that "Akamine & Sons, Ltd." was the mortgagor; it was signed by Sotaro and George Akamine as officers of "Akamine & Sons, Ltd."; but the acknowledgment signed by the notary referred to the corporation as "Arakawa & Sons, Ltd." The acknowledgment contained the names of Sotaro and George Akamine and also stated that the seal affixed to the mortgage "is the corporate seal of said corporation." The seal was the Akamine & Sons, Ltd. corporate seal. The mortgage was recorded in the Office of the Assistant Registrar of the Land Court and in the Bureau of Conveyances.

On February 14, 1961, American Security loaned Akamine & Sons, Ltd. $105,000. The corporation gave American Security a promissory note and an additional charge mortgage which provided that this loan was secured by the property secured in the mortgage between the same parties dated September 26, 1960.[1] The additional charge mortgage was recorded in the Office of the Assistant Registrar of the Land Court and in the Bureau of Conveyances.

On August 22, 1962, Val and Akamine & Sons, Ltd. borrowed $40,000 from American Security to finance Val's operations. As security, Akamine & Sons, Ltd. gave American Security a mortgage on a lot it owned in Waimalu and Val agreed to use $40,000 from sales at Val's Ewa store to pay off the loan.

---

[1]The February 14 mortgage provided that the mortgagor

does hereby make said additional loan of ONE HUNDRED FIVE THOUSAND AND NO/100 DOLLARS ($105,000.00) an additional charge upon the said original mortgage and upon the property described in said original mortgage.

In August and September 1962, Akamine & Sons, Ltd., by three documents mortgaged to Hawaii National the same property covered by American Security's mortgage of September 26, 1960. The consideration for the mortgages to Hawaii National was its forbearance from suing on overdue promissory notes of several corporations owned by the Akamines and which notes were endorsed by members of the Akamine family, as individuals.

On January 23, 1963, American Security, Val, Akamine & Sons, Ltd., another corporation owned by the Akamines, and four of the Akamines as individuals executed an agreement which gave American Security the power to sell enumerated pieces of property, including some covered by the September 26, 1960 mortgage.

In July, 1963, Val defaulted on the $190,000 loan. American Security took no legal steps to recover from Val. On September 28, 1964, Val was declared bankrupt.

The trial court held that all of American Security's loans to Akamine & Sons, Ltd. and to Val were secured by the September 26 mortgage. Hawaii National alleges that the trial court committed three errors. First, Hawaii National argues that the mortgage was not entitled to be recorded because of a defective acknowledgment. Second, it argues that the trial court erred in refusing to admit parol evidence of the intention of George Akamine as to what debts were to be secured by the September 26 mortgage. Third, it argues that the trial court erred in holding that the mortgage covered the $190,000 loan to Val and the $40,000 loan to Akamine & Sons, Ltd. and Val.

## 1. The Defective Acknowledgment

To accept Hawaii National's contention that the typographical error of referring to "Arakawa & Sons, Ltd." rather than to "Akamine & Sons, Ltd." invalidated the acknowledgment would be to subordinate reality to technicality. To be entitled to recording, a conveyance must be acknowledged, R.L.H. 1955, § 343-25. A certificate of acknowledgment need only

state in substance that the person who executed the instrument appeared before the officer granting the certificate and

acknowledged or stated that he executed the same, and that such person was personally known to the officer granting such certificate to be the person whose name is subscribed to the instrument as a party thereto . . . . R.L.H. 1955, § 343-26.

An acknowledgment is valid as long as it complies *substantially* with the statute, *Hawaiian Trust & Inv. Co* v. *Barton,* 16 Haw. 294 (1904). Hawaii National cites no cases in Hawaii dealing with mistakes in transcribing the name of the mortgagor. Whatever validity might remain in *Lalakea* v. *Hilo Sugar Co.,* 15 Haw. 570 (1904), it is inapplicable here because the defect there was the failure of the acknowledgment to indicate that the persons acknowledged execution of the mortgage.

Reading the acknowledgment and the mortgage together, it is apparent that the substitution was a mere clerical error which does not interfere with the effect of recorded conveyances. The persons making the acknowledgment also signed the mortgage in the same representative capacities. The acknowledgment stated that the seal was that of the corporation on whose behalf the persons were acknowledging execution of the mortgage. The seal was the seal of Akamine & Sons, Ltd. Looking to external evidence, the notary's records showed that the corporation which was represented was "Akamine & Sons, Ltd." Finally, there is no allegation that Hawaii National was prejudiced by the error. In these circumstances, we agree with the trial court that

to hold that there is no constructive notice because of an obvious clerical error in the acknowledgment where the mortgage has in fact been accepted for recordation and recorded violates common sense.

The acknowledgment was sufficient under the statute's standard of substantiality.

## 2. Exclusion of Parol Evidence

Hawaii National contends that the trial court erred in excluding testimony by George Akamine as to the debts he intended the September 26 mortgage to cover. The trial court rejected its

contention that the parol evidence rule is inapplicable where the evidence is offered by a stranger to the instrument. We agree.

We are mindful of statements in many opinions, *e.g., In re Shield Bros.*, 134 Iowa 559, 111 N.W. 963 (1907), that:

> As against a stranger to the contract, a party thereto may assert that the agreement was other or different — in any respect and to any extent — than that which the writing imports. *Supra* at 562, 111 N.W. at 963.

At least one treatise adopts this approach.[2] But with rare exceptions, the cases do little more than state that "this is a fundamental doctrine". *Livingston* v. *Stevens*, 122 Iowa 62, 67, 94 N.W. 925, 926 (1903). The only case Hawaii National cites which contains even a general statement of reasons is *Bruce* v. *John L. Roper Lumber Co.*, 87 Va. 381, 13 S.E. 153 (1891). The opinion quotes from 1 Greenleaf, *Evidence* § 279 to the effect that strangers

> might be prejudiced by things recited in the writings contrary to the truth, through the ignorance, carelessness, or fraud of the parties . . . . Quoted *supra* at 383, 13 S.E. at 153.

Furthermore, most cases in which the exception in favor of strangers is invoked involve situations in which parties to the instrument could have introduced parol evidence under one of the well-recognized exceptions to the parol evidence rule.

An examination of the purpose and nature of the parol evidence rule requires us to apply it in any case where the issue involved is what rights or duties were created by the instrument. 3 Corbin, *Contracts* 572-78 (Rev'd. 1960) ; 9 Wigmore, *Evidence* 149-51 (3d ed. 1940); 4 Williston, *Contracts* 1154-67 (3d ed. 1961). The parol evidence rule is a principle of substantive law and not a rule of evidence, *Midkiff* v. *Castle & Cooke, Inc.*, 45 Haw. 409, 422, 368 P.2d 887, 894 (1962). As a rule of substantive law, it determines the parties' legally enforceable contractual obligations.

> It must be remembered that the written contract represents the truth and the whole truth [as a matter of substantive law]

---

[2] 2 Jones, *Evidence* 928-30 (5th ed. 1958).

of the contractual obligations of A and B in whatever way and between whatever parties an inquiry as to such obligations may become important. 4 Williston, *supra* at 1163.

Once the parties execute an instrument which contains their whole agreement, their previous negotiations and agreements are legally ineffective and evidence relating to those previous negotiations or agreements is irrelevant regardless of who offers it.

The alleged prejudice which might occur may be prevented by introduction of parol evidence by the stranger under any of the numerous exceptions to the parol evidence rule. A stranger could introduce parol evidence to prove that the written agreement is fraudulent as to him. In *Chang* v. *Meagher*, 40 Haw. 96 (1953), the defendant was a joint venturer under an agreement which stated that the joint venture began operation on August 1. The plaintiff was permitted to introduce parol evidence to establish that the joint venture had been operating before that time and the services the plaintiff performed in July, ostensibly for the other member of the joint venture as an individual, were rendered for the joint venture. Although the court stated the broad principle that the parol evidence rule does not apply to strangers to the instrument, we think that the decision is more soundly based on the right of a party or stranger to the instrument to show that the instrument is fraudulent.

The main issue in this case was the precise nature of the obligations secured by the mortgage, that is the relations between American Security and Akamine & Sons, Ltd. The mortgage is the integrated document containing their entire agreement and parol evidence could not be introduced merely because Hawaii National was not a party to the mortgage.

Hawaii National contends that it was entitled to have George Akamine's testimony introduced under either of two well-recognized exceptions to the parol evidence rule: to prove the real consideration for the mortgage, and to prove fraud. Hawaii National's attempt to connect the issue of consideration with the debts intended to be covered is ingenious but ineffective. It does not contend that the mortgage failed for lack of consideration or that the stated consideration was not given by American Security.

Even if the question of consideration were in issue, the parol evidence, in the form of George Akamine's testimony, did not relate to this issue and therefore was properly excluded.

Finally, even were we to construe Hawaii National's allegation in its amended petition to intervene as an allegation of fraud, the offer of proof failed to support the allegation.[3] On cross-examination, George Akamine conceded that he had no role in negotiating the mortgage. Such testimony was completely worthless on the issue of fraud.

### 3. Coverage of the Mortgage

Mortgages to secure future advances have been authorized by the legislature since 1939, S.L.H. 1939, Act 255. R.L.H. 1955, § 196-1 provides in part that a mortgage

> may secure . . . a debt incurred for advances which may be made by the mortgagee subsequent to the execution of the mortgage even though the mortgagee is under no contractual duty to make such advances.

The only mention of this provision in the legislative reports states that it

> will save the borrower the costs of the preparation of additional charge mortgages and the recording costs of such additional charge mortgages. Stand. Comm. Rep. No. 396, House J. 1939 at 1337.

The statute may be read as authorizing the broadest form of mortgage for future advances, but we decline so to construe it.

Mortgages to secure future advances may take many forms, *see* Blackburn, *Mortgages to Secure Future Advances*, 21 Mo. L.Rev. 209, 211 (1956). Significant benefits to the mortgagor, the mortgagee, and the economy may result from intelligent use of such mortgages.[4] Such mortgages, however, often "fall far short

---

[3] The language Hawaii National relies on as alleging fraud is that American Security "contrary to any prior understanding and without justification" attempted to include additional debts under the mortgage.

[4] Financing costs may be lower, Osborne, *Mortgages* 276 (1951). They provide quicker, more flexible financing, Blackburn, *Mortgages to Secure Future Advances*, 21 Mo. L.Rev. 209, 209-11 (1956).

of reaching a financial utopia." 21 Mo. L.Rev. at 211. In spite of the severe restriction the broader manifestations of the mortgage for future advances place on the mortgagor, we do not know of any court which has denied enforcement of such mortgages as contrary to public policy.[5] Many courts, however, have placed limits on the mortgages.[6] Several states have legislatively restricted their use.[7]

We are prevented from holding a mortgage to secure future advances contrary to public policy by its statutory authorization and the undeniable benefits which it may engender. As a court of equity, however, we will construe such mortgages very strictly against the mortgagee. *See First* v. *Byrne*, 238 Iowa 712, 28 N.W.2d 509 (1947). Completely unrestricted enforcement of such mortgages would tend to reduce the borrower to the status of economic serf. One commentator has viewed this as a virtue since it would enable the lending institution to "act as a check on the mortgagor to discourage excessive credit buying".[8] We cannot agree that a lending institution, any more than a state or the federal government, makes a desirable "Big Brother".

Under the ejusdem generis rule, the statute does not require us to enforce a dragnet, or anaconda, clause in a mortgage as to debts or obligations not of the same kind as the specific principal debt or obligation for which the mortgage is given. Unless the prior or subsequent advance relates to the same transaction or series of transactions, the mortgage must specifically refer to it for the advance to be secured. This court will not assist a lending

---

[5]3 Glenn, *Mortgages* 1601 (1943); 1 Jones, *Mortgages* 503 (7th ed. 1904); Osborne, *supra* note 3 at 284.

[6]Connecticut has taken the strongest stand against the broad mortgage to secure future advances. *See* Pettibone v. Griswold, 4 Conn. 158 (1822). *See also*, Berger v. Fuller, 21 S.W.2d 419 (Ark. 1929) (court refused to conclude that the mortgagor intended to secure the mortgagor's debts which the mortgagee might purchase from others); Beavers v. Le Sueur, 188 Ga. 393, 3 S.E.2d 667 (1939) (court refused to construe the broad clause to include damages the mortgagee sustained from mortgagor's breach of contract unrelated to the mortgage debt); Belton v. Farmers' & Merchants' Bank & Trust Co., 186 N.C. 614, 120 S.E. 220 (1923) (court refused to include any debt other than the one specifically secured on the grounds that no others were "within the contemplation of the parties").

[7]Ga. Code Ann. § 67-1316; Md. Code Ann. Art. 66, § 2; N.H.Rev. Stat. Ann. § 476:3.

[8]Blackburn, *supra* note 4 at 211.

institution in an attempt to captivate a borrower by inclusion in a mortgage of a broad all inclusive dragnet clause. Contracts requiring one party to deal exclusively with one supplier have been viewed with great suspicion under the antitrust laws. *Standard Oil Co.* v. *United States* (Standard Stations), 337 U.S. 293 (1947); R.L.H. 1955, as amended § 205A-3. To attempt to foreclose, for example, on the mortgagor's home for debts incurred in operating a business and which debts are not specifically covered by the mortgage would be unconscionable and contrary to public policy.

Even were we to decide this case on the basis of the intention of the parties, the result would be the same. American Security recorded an additional charge mortgage to secure its subsequent loan of $105,000 to Akamine & Sons, Ltd. If any loan could be construed as within the terms of the clause of the original mortgage, it was that loan. As recognized by the legislature, the benefit of a mortgage to secure future advances is the elimination of the cost of additional charge mortgages. Nowhere in the record did American Security attempt to explain the reason for the additional charge mortgage. Furthermore, none of the other loan documents, allegedly secured by the mortgage, refer in any way to the mortgage as security. In every case, American Security received full security for each debt.

American Security is entitled to receive proceeds from the foreclosure sale sufficient to cover the unpaid balances of the original loan of $250,000 and the subsequent loan of $105,000 with interest, costs, attorney's fees and other expenses properly chargeable to it. Hawaii National is entitled to the proceeds remaining to the extent that they may be required to cover its loan secured by its mortgage.

Reversed and remanded for further proceedings.

*Chuck Mau* (*Mau & Ho* of counsel) for petitioner-intervenor-appellant.

*Walter G. Chuck* (*Chung, Vitousek, Chuck & Fujiyama* of counsel) for respondent-appellee.