ASSOCIATION OF APARTMENT OWNERS OF 1555 POHAKU, Plaintiff-Appellant, *v.* WALKER-MOODY CONSTRUCTION CO., LTD., and HAWAIIAN FINANCE AND INVESTMENT COMPANY, LTD., Defendants-Appellees

NO. 7158

CIVIL NO. 54810

JULY 9, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY BURNS, J.

This is an appeal of a summary judgment entered against Plaintiff-Appellant Association of Owners of 1555 Pohaku. The question is whether the case involves any issues of material fact. We affirm in part and reverse in part.

Viewed most favorably to the Association of Owners, the facts are as follows:

Defendant-Appellee Walker-Moody Construction Co., Ltd., was the contractor and Defendant-Appellee Hawaiian Finance and Investment Company, Ltd., was the developer of a two building condominium apartment project at 1555 Pohaku.

On August 31, 1976, in First Circuit Civil No. 49259, the Association of Owners sued the Contractor and the Developer for damages

for specified and unspecified "defects and/or inadequacies" in the common elements of the buildings.

Thereafter, the parties settled Civil No. 49259 (and another case) by a Settlement Agreement, Mutual Release and Agreement Not To Sue, dated April 12, 1977, which states, *inter alia:*

WHEREAS, all parties hereto desire to reach a full and final compromise and settlement of all matters and all causes of action as between themselves arising out of or in any way connected with the foregoing lawsuits subject only to the exceptions hereinafter noted.

.   .   .   .

(1) *Only the Common Areas.*   This settlement agreement affects only the common areas of the Project. . . .

.   .   .   .

(3) *Work to be performed and obtained by Contractor:*

.   .   .   .

(b) . . . In addition, Contractor to extend the warranty for recreation roof for an additional six (6) months period upon completion of necessary repairs. . . .

.   .   .   .

(5) *Supervision.*   The Association shall appoint a person or person [sic] to direct and review, as it deems necessary, all work to be performed herein. All of said work shall be deemed satisfactory unless the Contractor or Developer are [sic] advised to the contrary within twenty-four (24) hours of Contractor's notice of completion of each such item.

.   .   .   .

(8) It is understood and agreed by the parties hereto that the covenants set forth above are . . . the final consideration for this agreement and no other or further payments or work have been promised or will be forthcoming.

The Association of Owners indicated its consent to the Settlement Agreement by the signatures of five directors.

The Association's Board appointed Godfrey Miyashiro and Bruce Cook to direct and review all work to be performed pursuant to the Settlement Agreement, and the Association's attorney so notified the attorney for Hawaiian Finance by letter dated April 5, 1976.

On July 12, 1977, Renold Slutz, President and Director of the Association of Owners, and Raleigh Miller, Vice President and Director, signed the following statement:

> In accordance with paragraph (5) of the ... settlement agreement ... the undersigned representative of the Association hereby confirms satisfactory completion of the work to be performed ... by the Contractor as set forth ... in said settlement agreement.

On August 9, 1977, Bruce Cook resigned his appointment "to a committee to oversee the proper completion" of the Contractor's performance under the Settlement Agreement.

On June 5, 1978, the Association of Owners sued the Developers for (1) failure to complete the work specified by the Settlement Agreement or to complete it in a satisfactory manner; and (2) a crack in Building B, the second building of the project.

On June 27, 1978, the Contractor and the Developer filed a Hawaii Rules of Civil Procedure (HRCP) Motion to Dismiss Complaint Pursuant to HRCP Rule 12(c). Since matters outside the pleadings were considered, the motion was heard as a motion for summary judgment under HRCP, Rule 56. The lower court granted the motion and the Association of Owners appealed.

I.

Without question, the record presents a factual dispute whether the Developers completed in a satisfactory manner the work required by the Settlement Agreement. The Contractor and the Developer contend, however, that the Association may not litigate that factual issue because (1) on July 12, 1977, their President-Director and Vice President-Director confirmed satisfactory completion; and (2) the Association did not, as required by paragraph (5) of the Settlement Agreement, advise the Contractor or Developer within 24 hours of Contractor's notice of completion of each item that the work was unsatisfactory. The Association responds (1) that the President-Director and the Vice President-Director were not authorized to confirm satisfactory completion; and (2) that the Association did not, prior to this suit, receive notice of completion of each item; therefore, the 24-hour period did not begin to run.

To affirm the summary judgment on this issue, we must conclude that the Association's responses raise no genuine issues of material fact. From the record, we are unable to make the necessary conclusion and we, therefore, reverse the summary judgment as to the issues raised by the Association as noted above.

## II.

The Settlement Agreement extended the warranty for the recreation roof for an additional six-month period upon completion of necessary repairs. The record does not indicate the date of completion of the roof repairs. Even if the confirmation of satisfactory completion was held to be valid and binding, from the record before us, we cannot say that it is a waiver or release of all of the Association's warranty rights created in the Settlement Agreement. Therefore, we reverse the summary judgment as to this issue also.

## III.

The final issue is whether the Settlement Agreement bars the Association from asserting a claim for the crack in Building B.

The Association filed an affidavit by the attorney who negotiated the Settlement Agreement for it in which he states that the Settlement Agreement "was the final product of extensive negotiations" and that "it was neither his understanding or intention that the Settlement Agreement was to include the crack in Building B."

In a memo,[1] the Association asserts that the Settlement Agreement covered only disputed items and the crack in Building B was not a disputed item because the Contractor and the Developer had previously agreed to fix it.

The question is whether the attorney's allegations present a genuine issue of material fact.

In the battle between Professor Corbin and Professor Williston concerning the parol evidence rule, *see* CALAMARI & PERRILO, *Plea for a Uniform Parol Evidence Rule and Principles of Contract Interpretation,*

---

[1] The facts alleged in the memo have not satisfied the requirements of HRCP, Rule 56(e) (1972).

42 Ind. L. J. 333 (1967), the Hawaii Supreme Court seems to be siding with Professor Corbin.[2] *See Hokama v. Relinc Corp.*, 57 Haw. 470, 559 P.2d 279 (1977) (dealing with a contract); *Graham v. Washington University*, 58 Haw. 370, 569 P.2d 896 (1977) (dealing with a trust).

Concerning the precise issue presented in this case, Professor Corbin states:

> If a written document, mutually assented to, declares in express terms that it contains the entire agreement of the parties, and that there are no antecedent or extrinsic representations, warranties or collateral provisions that are not intended to be discharged and nullified, this declaration is conclusive as long as it has itself not been set aside by a court on grounds of fraud or mistake, or on some ground that is sufficient for setting aside other contracts. [Footnote omitted.]

3 CORBIN, *Contracts* § 578 at 402-403 (1960).

We prefer to take what Professors Calamari and Perillo call "a consistent and enlightened approach" by applying the Uniform Commercial Code's (UCC) rule even though this case is not specifically under its coverage.

Hawaii's version of the UCC as contained in Hawaii Revised Statutes (HRS) Chapter 490 (1976 as amended) says, in relevant part:

> 490:2-202.  Final written expression: parol or extrinsic evidence. Terms . . . in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented.
>
> .   .   .   .
>
> (b) By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

The evidence offered by the Association contradicts specific

---

[2] Query whether the Hawaii Supreme Court is applying the same rule in cases dealing with statutes. *See State v. Tavares, Jr.*, 63 Haw. 509, 630 P.2d 633 (1981).

unambiguous terms[3] in the Settlement Agreement which the parties agree is the final expression of the agreement between the parties.

Whether we apply Corbin's rule or the UCC's rule, the Settlement Agreement bars the Association from asserting a claim for the crack in Building B.

We affirm the summary judgment with respect to the claim for the crack in Building B. We reverse the summary judgment with respect to the claim for failure to satisfactorily complete the work specified in the Settlement Agreement and remand for further proceedings consistent with this opinion.

*James N. Duca (Steven Guttman* with him on the briefs) for plaintiff-appellant.

*J. W. Ellsworth (Brian D. Sugimoto* with him on the brief) for defendants-appellees.

---

[3] HRS § 490:1-201(42): "Term" means that portion of an agreement which relates to a particular matter.