HAWAII LEASING, a registered limited Hawaii partnership, by its general partner, Amfac Financial Corp., a Hawaii corporation, Plaintiff-Appellee, *v.* LEROY KLEIN and B.A. YORKSHIRE, Defendants-Appellants

NO. 7893

(CIVIL NO. 51176)

FEBRUARY 1, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

Defendants Leroy Klein (Klein) and B. A. Yorkshire (Yorkshire) appeal from the summary judgment on the Equipment Lease No. 2571 (Lease 2571) claim and the judgment rendered after a bench trial on the Equipment Lease No. 2650 (Lease 2650) claim, both judgments being in favor of plaintiff Hawaii Leasing.

The issues raised on appeal are:

1. Whether the court erred in granting plaintiff's motion for partial summary judgment on the Lease 2571 claim; and

2. Whether the trial court's findings of fact and conclusions of law based thereon concerning the Lease 2650 claim are clearly erroneous.

We answer yes to the first question and no to the second.

Plaintiff is a Hawaii limited partnership. Klein was the chairman, and Yorkshire was the president, of Roybud Corporation of Hawaii, Inc. (Roybud). On both equipment leases, plaintiff was the lessor, Roybud was the lessee, and Klein and Yorkshire were the guarantors of the rentals and other obligations payable under the leases.

To avoid confusion, the facts involving the two equipment lease transactions are set forth separately.

LEASE 2571

In the light most favorable to defendants, the record discloses the following facts. Prior to November 19, 1969, Yorkshire approached plaintiff concerning the installation of carwash equipment at a Pearl City location by Roybud. Plaintiff agreed to purchase the equipment for $83,292 and lease it to

Roybud, on the condition that both Klein and Yorkshire would guarantee the payment of the lease rents. On November 19, 1969, Klein and Yorkshire executed an agreement guaranteeing the payment of forty percent of whatever may be owed by Roybud in case of default under Lease 2571.

On December 4, 1969, Yorkshire, as president, signed Lease 2571 for Roybud. Lease 2571, prepared by plaintiff, contained no option to purchase. However, according to Yorkshire, plaintiff had previously agreed that Roybud could purchase the leased equipment at ten percent of its original purchase price at the end of the five-year term.

The Pearl City carwash operation failed to prosper, and Roybud defaulted in its lease rent payments. On February 2, 1971, in consideration of plaintiff's extension of time for payment, Klein and Yorkshire agreed to increase their limited guaranty from forty percent to seventy-five percent.

The carwash operation failed to improve and rent arrearages on Lease 2571 increased. Plaintiff sought purchasers for the carwash equipment. On October 1, 1973, plaintiff wrote to Yorkshire that due to "the large amount in arrears," it was interested in selling the equipment to Union Oil Company. On October 8, 1973, Union Oil wrote to Yorkshire inquiring whether Roybud was interested in selling the equipment for $20,000. On March 25, 1976, plaintiff sent a letter to Yorkshire, as president of Roybud, demanding payment in full by April 9, 1976 and stating that Union Oil might be willing to purchase the equipment for approximately $15,000 to $20,000. By a letter dated April 21, 1976, Yorkshire responded that he was willing to pay $20,000 as a guarantor if he was released from further liability and, further, that plaintiff could negotiate the terms and price and sell the equipment to Union Oil. Yorkshire felt that Union Oil would be willing to pay somewhere between $20,000 and $25,000 for the equipment. Yorkshire advised plaintiff to negotiate separately with Klein as to his obligations as a guarantor.

Subsequently, on December 30, 1976, plaintiff sold the equipment to Union Oil for $20,000 at private sale. Plaintiff obtained no other bids or offers for the equipment.

On April 1, 1977, plaintiff sued Klein and Yorkshire for the deficiency on their guaranty.

Plaintiff filed a motion for partial summary judgment on August 29, 1978. The order granting plaintiff's motion was filed on September 18, 1978. The judgment amount of the Lease 2571 claim was $54,224.19, together with interest at the legal rate.

## LEASE 2650

On July 3, 1970, plaintiff, as lessor, and Roybud, as lessee, entered into Lease 2650 covering carwash equipment having a purchase price of $34,745. Klein, as chairman, and Yorkshire, as president, signed Lease 2650 for Roybud. The equipment was for a Waianae carwash operation.

On the same date, Klein and Yorkshire executed a guaranty, unconditionally guaranteeing payment of all lease rent under Lease 2650.

The Waianae carwash operation proved to be unprofitable. In late 1971, Roybud terminated the operation and stored the equipment on Sand Island.

Rentals due on Lease 2650 fell substantially in arrears. Hac-Per, Inc. (Hac-Per) became interested in taking over Lease 2650, but at lower lease rentals. In May 1972, Yorkshire began negotiations to obtain plaintiff's consent to a sublease and/or assignment to Hac-Per.

Plaintiff agreed to consent to a sublease and/or assignment to Hac-Per and to release Klein and Yorkshire on their guaranty subject to the conditions that (1) Klein and Yorkshire would pay all existing arrearages as well as the difference between Lease 2650 rental and the amount of rent Hac-Per was to pay, and (2) the rentals payable by Hac-Per would be guaranteed by Hac-Per's principals, mainly Glenn Hackett.

To satisfy the first condition, Klein and Yorkshire each executed and delivered to plaintiff promissory notes in the sum of $11,171.32. However, the second condition was not met. The Hac-Per Lease, Assignment and Notice of Assignment, delivered on June 30, 1972 by Yorkshire to plaintiff for approval, failed to include Hackett's guaranty. Without Hackett's guaranty, plaintiff refused to release Klein and Yorkshire as guarantors of Lease 2650. Plaintiff informed Yorkshire of this fact.

Subsequently, Klein and Yorkshire made the payments required under their respective promissory notes in full. Hac-

Per made lease rental payments for about six months. Thereafter, it fell in arrears on the rent.

Plaintiff repossessed the carwash equipment and sold it for $1,000 on March 23, 1976.[1]

On April 1, 1977, plaintiff sued defendants for the deficiency on their guaranty. After a bench trial, the court entered its findings of fact and conclusions of law on February 6, 1980. On the same day, the court filed its judgment awarding plaintiff $23,853.84, together with interest at the legal rate, on its Lease 2650 claim.

## I.

As to Lease 2571, defendants' theory of their case is based on Article 9 — Secured Transactions, Hawaii Revised Statutes (HRS) ch. 490 (1976 & Supp. 1982), Hawaii's Uniform Commercial Code (UCC). In this opinion, all references to section numbers in HRS ch. 490 will be designated by UCC section numbers.

Defendants' theory is that (1) there was an oral collateral option to purchase agreement; (2) such option rendered Lease 2571 a security agreement under UCC §§ 9-101, *et seq.,* rather than a "true lease";[2] and (3) due to its noncompliance with the

---

[1] As to Lease 2650, defendants did not interpose the defense that Lease 2650 was a security agreement and that plaintiff violated the requirements of Hawaii Revised Statutes § 490:9-504 (1976) (Hawaii's Uniform Commercial Code § 9-504) in disposing the carwash equipment.

[2] In defining the term "security interest," Uniform Commercial Code (UCC) § 1-201(37) provides in part:
Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.
*See, e.g., McGalliard v. Liberty Leasing Co. of Alaska, Inc.,* 534 P.2d 528 (Alaska 1975) (an option to purchase at 10% of the original purchase price and approximately

notice requirements of UCC § 9-504 in the disposal of the security (carwash equipment), plaintiff was not entitled to a deficiency judgment.[3] Defendants contend that Yorkshire's affidavit raised a genuine issue of material fact whether there was an option to purchase agreement. Thus, the granting of summary judgment was improper. We agree.[4]

Rule 56(c), Hawaii Rules of Civil Procedure (HRCP) (1981), mandates that summary judgment is to be rendered only if there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. *Iuli v. Fasi,* 62 Haw. 180, 613 P.2d 653 (1980); *Lau v. Bautista,* 61 Haw. 144, 598 P.2d 161 (1979); *King v. Ilikai Properties, Inc.,* 2 Haw. App. 359, 632 P.2d 657 (1981).

Viewing the evidence in the record in the light most favorable to defendants, *City & County v. Toyama,* 61 Haw. 156, 598 P.2d 168 (1979), our conclusion is that there is a genuine issue of material fact.

Yorkshire states in his affidavit, "It was specifically agreed at that time [before Lease 2571 was signed] that we could purchase the equipment for the nominal sum of ten percent of

---

7.2% of the total rentals under an equipment lease was minimal and the purported lease was not a true lease, but an installment loan).

Cases involving the question of whether a lease of personal property is a true lease or a UCC art. 9 security agreement may be found in Annot., 76 A.L.R. 3d 11 (1977). *See also* Coogan, *Leases of Equipment and Some Other Unconventional Security Devices: An Analysis of UCC Section 1-201(37) and Article 9 — Sales of Accounts and Chattel Paper — Consignments — Buyer's Security Interest,* in 1 Secured Transactions Under the Uniform Commercial Code, ch. 4A (1963 & Supp. 1982); C.W. Mooney, Jr., *Personal Property Leasing: A Challenge,* 36 Bus. Law. 1605 (1981).

[3] In Hawaii, the secured creditor's failure to comply with the notification and commercial reasonableness requirements of UCC § 9-504 will not result in an absolute forfeiture of the right to a deficiency judgment. Hawaii has adopted the "rebuttable presumption" rule which places on the secured creditor the burden of rebutting the presumption that the fair market value of the collateral equals the unpaid balance of the outstanding debt. *Liberty Bank v. Honolulu Providoring, Inc.,* 65 Haw. 273, 650 P.2d 576 (1982).

[4] Having thus ruled, we need not consider the second and third items of defendants' theory.

the original purchase price at the end of the leasing period." (Record at 328.)[5]

Citing *Akamine & Sons v. American Security Bank,* 50 Haw. 304, 440 P.2d 262 (1968); *Association of Apt. Owners v. Walker-Moody Construction Co., Ltd.,* 2 Haw. App. 285, 630 P.2d 652 (1981) and *Transamerican Leasing Co. v. Three Bears, Inc.,* 586 S.W.2d 472 (Tex. 1979), plaintiff claims that under the parol evidence rule Yorkshire's evidence is inadmissible to contradict Lease 2571. However, the rationale in each of those cases is not applicable to the facts in this case.

In *Akamine & Sons, supra,* our supreme court stated, "Once the parties execute an instrument which contains their *whole agreement,* their previous negotiations and agreements are legally ineffective and evidence relating to those previous negotiations or agreements is irrelevant regardless of who offers it." 50 Haw. at 310, 440 P.2d at 266 (emphasis added).

In *Walker-Moody, supra,* concerning the parol evidence rule, this court opted for Professors Calamari's and Perillo's "consistent and enlightened approach" by applying the Uniform Commercial Code's parol or extrinsic evidence rule. UCC § 2-202 provides in relevant part:

> Terms . . . in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or *supplemented*
>
> \*   \*   \*   \*
>
> (b) *By evidence of consistent additional terms* unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement. [Emphasis added.]

---

[5] This statement is substantiated by the December 11, 1969 letter from Yorkshire to Mike Wilson of Hawaii Leasing, attached to Yorkshire's affidavit as Exhibit "4." Being neither sworn to nor certified, the exhibit must be disregarded. Rule 56(e), Hawaii Rules of Civil Procedure (1981); *Pacific Concrete F.C.U. v. Kauanoe,* 62 Haw. 334, 614 P.2d 936 (1980); *Hawaiian Insurance & Guaranty Co. v. Fernandez,* 3 Haw. App. 95, 96, 641 P.2d 1365, 1367 (1982) ("The continued cavalier disregard of . . . Rule 56(e), HRCP, is a matter of serious concern to us.").

In *Transamerican Leasing, supra,* the trial court excluded evidence showing that there was an oral agreement whereby the equipment lessee had an option to purchase the equipment. On appeal, the Texas Supreme Court stated:

> We hold that the evidence was properly excluded as violative of the parol evidence rule. The written lease agreements contain no provision giving Three Bears [the lessee] an option to purchase the equipment. Furthermore, each lease states that it "constitutes the sole agreement of the parties with respect to the subject matter thereof." Thus, the claimed purchase option agreement is inconsistent with the lease contracts and not merely collateral to them. *When such a purchase option agreement is inconsistent with, and not merely collateral to, a lease contract, the parol evidence rule applies.*

586 S.W.2d at 477-78 (emphasis added).

We believe the rationale in *Woods-Tucker Leasing Corp. v. Hutcheson-Ingram,* 642 F.2d 744 (5th Cir. 1981), rather than that in *Transamerican Leasing,* is applicable to the facts in this case. In *Woods-Tucker,* 642 F.2d at 746 n.5, evidence of an oral option to purchase was admitted into evidence because "the oral option was collateral to, not inconsistent with, the lease obligation."

Although Lease 2571 is unambiguous, unlike the lease in *Transamerican Leasing,* it contains no integration clause. Thus, the "whole agreement" rule of *Akamine & Sons* would not preclude extrinsic evidence of a collateral agreement between the parties. As in *Woods-Tucker,* we find that an oral option to purchase at the end of the lease term is *consistent* with the provisions of Lease 2571. The UCC parol or extrinsic evidence rule permits Lease 2571 to be "supplemented" by "evidence of consistent additional terms," namely, an option to purchase.

Since Yorkshire's statement of the oral option to purchase is not inadmissible under the parol evidence rule, his affidavit raised a genuine issue of material fact. A motion for summary judgment is not a substitute for trial. *Gossett v. Du-Ra-Kel Corp.,* 569 F.2d 869 (5th Cir. 1978). *See also McKeague v. Talbert,* 3 Haw. App. ___ (No. 8218, January 26, 1983). Thus, summary judgment was inappropriate for the Lease 2571 claim.

## II.

Concerning Lease 2650, defendants claim that certain findings of fact of the trial court are not supported by the evidence. They argue, therefore, that the conclusions of law respecting the defenses of release and accord and satisfaction are erroneous.

On appeal, a trial court's finding of fact "shall not be set aside unless clearly erroneous." Rule 52(a), HRCP (1981). Where there is substantial evidence in the record to support the court's finding, it is not clearly erroneous. *Shoemaker v. Takai,* 57 Haw. 599, 561 P.2d 1286 (1977); *Geldert v. State,* 3 Haw. App. 259, 649 P.2d 1165 (1982). Also, a finding is not clearly erroneous, unless the appellate court, upon review of the entire record, is left with a definite and firm conviction that a mistake has been made. *Waugh v. University of Hawaii,* 63 Haw. 117, 621 P.2d 957 (1980); *Kim v. State,* 62 Haw. 483, 616 P.2d 1376 (1980); *Yorita v. Okumoto,* 3 Haw. App. 148, 643 P.2d 820 (1982).

We have carefully reviewed the record and find that the findings of fact are supported by substantial evidence. Furthermore, we are not convinced that a mistake was made by the trial court.

### A.

As to the defense of release, there was no written release of Klein and Yorkshire by plaintiffs. The trial court specifically found that the testimony of plaintiff's witnesses was more credible than that of Yorkshire, and that plaintiff did not release Klein and Yorkshire from their guaranty obligations.[6]

On review, due regard must be given to "the opportunity of the trial court to judge of the credibility of the witnesses." Rule 52(a), HRCP (1981). We are bound by the credibility ascribed to the testimony of the witnesses by the trial court. *Shinn v. Edwin Yee, Ltd.,* 57 Haw. 215, 553 P.2d 733 (1976); *Lee v. Kimura,* 2 Haw. App. 538, 634 P.2d 1043 (1981).

---

[6] Finding of Fact 21.

B.

The defense of accord and satisfaction is based on Yorkshire's check dated December 19, 1974, for $3,123.24 made payable to plaintiff.[7] On the reverse side of the check is the following typewritten notation:

Interest for 1975 $3,123.24[.] Bal. due on note dated 7/10/72 $2,038.82. This is the balance due under lease #2650, which is the total of B.A. Yorkshire's obligation under said lease.

In *Rosa v. Johnston,* 3 Haw. App. ___, 651 P.2d 1228 (1982), we stated that "an effective accord and satisfaction requires the following prerequisites: (1) existence of a 'bona fide dispute' between the parties involved, (2) tender by the obligor which gives the obligee adequate notice that a compromise is being proposed, and (3) effective acceptance of the compromise offer in order to discharge the original obligation." 3 Haw. App. at ___, 651 P.2d at 1232.

The trial court properly concluded that the accord and satisfaction defense was not proved for two alternative reasons. First, there was no "bona fide dispute" and, second, Yorkshire did not intend the check to be an offer of compromise.

At the time Yorkshire sent the check to plaintiff, there were three separate obligations pertaining to Lease 2650 — the promissory notes signed by Klein and Yorkshire, respectively, and the balance of the lease rentals that Hac-Per was to pay. Each of the obligations was a liquidated amount. Thus, there was no "bona fide dispute." *See Trask v. Shinn,* 41 Haw. 374 (1956); *Rosa v. Johnston, supra.*

During the trial, Yorkshire testified on cross-examination as follows:

Q   [By Mr. Rowan] Did you intend this [Defendants' Exhibit No. 12 — the check] to be an offer of compromise

---

[7] Defendants' Exhibit No. 12.

or satisfaction of something beyond the payment of the note?

A   No, it was just — [Transcript at 127.]

There being no intent to offer a compromise, *a fortiori,* none was proposed by Yorkshire to plaintiff.

The part of the judgment awarding $54,224.19 on the Lease 2571 claim is reversed and remanded for further proceedings. The portion of the judgment awarding $23,853.84 on the Lease 2650 claim is affirmed. The award of interest, attorney's fees and costs is vacated, subject to recomputation.

*Merle H. Horwitz (John A. Chanin* and *John C. Jannetto,* on the briefs) for defendants-appellants.

*Robert A. Rowan (David Schulmeister,* also on the brief, *Cades Schutte Fleming & Wright,* of counsel) for plaintiff-appellee.