**In re Dan K. DAVIS and, Jerrell Dean Davis, Debtors.**

**Bankruptcy No. 82–01331 MR.**

United States Bankruptcy Court, D. New Mexico.

Nov. 1, 1984.

Merrill L. Norton, Lovington, N.M., for debtors.

Robert I. Waldman, Roswell, N.M., trustee.

Gail Gottlieb, Albuquerque, N.M., for First Interstate of Lea County.

Nancy S. Cusack, Roswell, N.M., for KCL Sales.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court on First Interstate Bank of Lea County's (the Bank) motion to dismiss an objection to a portion of the Bank's secured claim raised by the trustee and KCL Sales, Inc. (KCL) an unsecured creditor.

The Bank stipulated to an allegation of facts by the trustee. In 1977, New Mexico Bank and Trust Company (predecessor to the Bank) loaned Mr. and Mrs. Davis (the debtors) $39,000.00 to purchase a home in Lea County, New Mexico. This note (Note 1) was secured by a mortgage on the home. A standard printed provision in the mortgage recited it was to secure all indebtednesses "whether now existing or which hereafter come into existence ...." The amount of $78,000.00 was filled in the space provided to indicate an upper limit to the lien.

Subsequent to the granting of the mortgage, Mr. Davis executed and delivered to the Bank two promissory notes. The proceeds of the notes were to be used in connection with his trucking business. In 1980, Mr. Davis obtained a $15,000.00 loan (Note 2). The face of Note 2 provided a space in which the collateral was to be indicated; this space was left blank. In 1981, Mr. Davis obtained a $20,000.00 loan (Note 3). Note 3 specifies that it is secured by an Assignment of Accounts Receivable. Neither of the two subsequent notes made reference to the previous mortgage.

In 1982 the Davises filed a voluntary petition for relief under 11 U.S.C. chapter 7. In 1984, pursuant to Court order, the mortgaged home was sold for $61,781.14. $39,468.74 was paid to the Bank, completely paying off Note 1.

The Bank contends that by virtue of the future advances clause contained in the mortgage it is entitled to the remaining proceeds of the foreclosure sale to pay Notes 2 and 3. The trustee and KCL contend that the future advances clause should not be enforced, rather, that the Bank should be secured only to the extent of the unpaid balance of Note 1. The issue thus framed is whether, under New Mexico law, subsequent advances are secured by a prior mortgage containing a future advances clause. We agree with the Bank's contention.

The validity and enforceability of future advances clauses has been settled in New Mexico by the legislature. N.M.S.A. 48–7–9 (1978) provides:

Every mortgage or other instrument securing a loan upon real estate and constituting a lien, or the full equivalent thereof, upon the real estate securing such loan, may secure future advances, and the lien of such mortgage shall attach upon its execution and have priority from

the time of recording as to all advances, whether obligatory or discretionary, made thereunder until such mortgage is released of record; provided, that the lien of such mortgage shall not exceed at any one time the maximum amount stated in the mortgage.

It is undisputed that the mortgage meets the express requirements of the statute. The mortgage secured a loan on real property, the mortgage was not released of record, the future advances clause incorporated a stated upper limit of $78,000.00, and the subsequent advances did not exceed this limit.

The trustee and KCL, however, urge that the future advances clause should be interpreted according to the Kansas [1]-Hawaiian [2] rule, which provides:

... in the absence of clear, supportive evidence of a contrary intention a mortgage containing a dragnet type clause will not be extended to cover future advances unless the advances are of the same kind and quality or relate to the same transaction or series of transactions as the principal obligation secured or unless the document evidencing the subsequent advance refers to the mortgage as providing security therefor...." [3]

We must reject this approach for several reasons. First, in citing the holdings of certain other jurisdictions, the trustee and KCL fail to recognize that New Mexico has previously given a rather expansive meaning to open-end mortgage provisions for future advances. In *New Mexico Bank and Trust Company v. Lucas Bros.*, 92 N.M. 2, 582 P.2d 379 (1978), the New Mexico Supreme Court held that advances made pursuant to such a provision take priority over all subsequent liens to the extent of the maximum lien amount stated in the mortgage. Without considering the defendant bank's contention that the subsequent loans were for a different purpose than the original mortgage (and so were not secured), the *Lucas* court adopted the rationale of N.M.S.A. 48–7–9 (1978).[4]

Second, although a compelling argument given the ease by which it could be accomplished, the fact that the loan did not make reference to the earlier mortgage is not sufficient to constitute a waiver of the mortgage provision. We recognize that there is authority to the contrary in other jurisdictions.[5] However, N.M.S.A. 48–7–9 (1978) governing future advances clauses contains no requirement that subsequent notes make reference to the previous mortgage.

Third, in the circumstances of this case we see no reason to conclude that the parties did not intend the mortgage provision to operate as written. It is difficult to see any merit in the trustee's and KCL's argument. The language of the mortgage makes it clear that the parties intended to secure the "payment of all loans, advances, indebtedness or liabilities, whether now existing or which hereafter come into existence ... however acquired by the mortgagee, due the mortgagee from the mortgagor ...." Further, the parties arrived at a figure of $78,000.00 as an upper limit to the lien of the mortgage. Absent such specific language the New Mexico law might require that the subsequent notes reference the mortgage or that the advances be of the "same class" as the primary obligation so that intent to include future advances could be inferred. However, here there is no need to "infer" the intent of the parties since that intent is expressed in clear and unambiguous language. As stated by the New Mexico Supreme Court in *Smith v. Price's Creamer-*

---

1. *Emporia State Bank and Trust Company v. Mounkes*, 214 Kan. 178, 519 P.2d 618 (1974).

2. *Akamine & Sons, Ltd. v. American Security Bank*, 50 Haw. 304, 440 P.2d 262 (1968).

3. Note 1 *supra*, 519 P.2d at 623.

4. The Court considered N.M.S.A. 48–7–9 (1978) (then § 61–7–9) although the statute was not directly applicable as the case had arisen before the effective date of the statute.

5. For a collection of authorities, see both the majority and dissenting opinions in *First Security Bank v. Shiew*, 609 P.2d 952 (Utah 1980).

*ies, Div. Etc.,* 98 N.M. 541, 544, 650 P.2d 825, 828–829 (1982):

> Failing a showing of ambiguity in a contract, or evidence of fraud, where the parties are otherwise competent and free to make a choice as to the provisions of their contract, it is fundamental that the terms of the contract made by the parties must govern their rights and duties.

There is no allegation, nor evidence, of any unfairness or oppressiveness in the relationship between the debtors and the Bank. In the absence of fraud, misrepresentation or other wrongful acts, "a party who executes and enters into a written contract is presumed to know the terms of the agreement, and to have agreed to each of its provisions...." *Smith,* 650 P.2d at 829. *See also, In re Guilmette,* 12 B.R. 799 (Bankr.Ct.D.R.I.1981); 11 Am.Jr.2d, Bills and Notes, § 695, 17 Am.Jur.2d, Contracts, § 149.

Finally, the trustee and KCL urge that the Court look to surrounding circumstances to determine the intent of the parties. They argue that the parties did not intend for the subsequent notes to be secured by the mortgage as evidenced by the fact that (1) the subsequent notes were signed by Mr. Davis alone; (2) Note 3 was secured by other collateral; (3) Mr. Davis listed Notes 2 and 3 as secured by accounts receivable in the petition for bankruptcy; and (4) the time lapse between the mortgage and the subsequent notes was almost three years.

We see nothing in the surrounding circumstances necessarily inconsistent with giving the future advances clause its plain meaning. The advances to the husband are covered by the lien of the mortgage even though the wife and husband were joint mortgagors. The wife, by signing the mortgage thereby consented to be bound by the terms of the mortgage for any advance that might be made to her, or her husband, or to both jointly. We consider the fact that there was collateral for the third note insufficient to constitute a waiver of the mortgage provision. *Everett Credit Union v. Allied Ambulance Ser.,* 12 Mass.App. 343, 424 N.E.2d 1142 (1981).

We feel that consideration may not be given to the statements of either party as to their subjective intent. *First National Bank of Dallas v. Rozelle,* 493 F.2d 1196 (10th Cir.1974); Restatement of the Law, Contracts, § 230. Lastly, an agreement to secure future advances would necessarily intend to secure sums at some indefinite and uncertain time.

Accordingly, it is held that the 1977 mortgage executed by the debtors to the Bank also secures the payment of the balance due on the 1980 and 1981 loans, up to a maximum amount of $78,000.00.

This memorandum opinion constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.

An appropriate order shall enter.