**In re George W. BASS and Patsy Bass, Debtors.**

**Bankruptcy No. 7–84–00267 MA.**

United States Bankruptcy Court, D. New Mexico.

Nov. 2, 1984.

---

**114**

Patricia J. Frieder, Albuquerque, N.M., for debtors.

Bill J. Sholer, Albuquerque, N.M., for trustee.

John M. Kulikowski, Albuquerque, N.M., for First Interstate Bank of Albuquerque.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court on the motion of First Interstate Bank to lift the automatic stay. The issue in the case is whether the mortgage on the residence of Mr. and Mrs. Bass, executed to First Interstate Bank, can be extended to provide security for a pre-existing business debt and a subsequent business debt by virtue of a dragnet clause and future advance clause in that mortgage.

Mr. and Mrs. Bass own the majority of stock in C.A.T. Distributors, Inc., (C.A.T.) a New Mexico corporation which is also in bankruptcy. On November 17, 1982, C.A.T. executed a commercial promissory note to First Interstate Bank in the amount of $43,652.00. This note was secured by accounts receivable, inventory and parts. Mr. and Mrs. Bass also executed personal guarantees for the C.A.T. debt on November 17, 1982. These guarantees had an upper stated unit of $75,000.00.

On December 10, 1982, Mr. and Mrs. Bass executed a promissory note to the bank in the amount of $19,748.24 (The Bass Note). The Bass note is secured by a real estate mortgage on their residence. The Bass Note has been reduced to a balance of approximately $15,900.00.

■ The real estate mortgage contains a dragnet clause and a future advances clause. A dragnet clause is a provision in a mortgage in which the mortgagor gives security for past and future advances as well as present indebtedness. *Uransky v. First Federal Savings and Loan*, 684 F.2d 750 (11th Cir.1982). The dragnet clause in the mortgage states:

> This mortgage is also to be and continue to be, from time to time, security for the payment of any sums of money owed by Mortgagor to Bank on the date hereof in excess of the indebtedness evidenced by the promissory note referred to herein and also security for the payment of such sum or sums of money as Mortgagor may from time to time in the future

owe to Bank, and if Mortgagor be more than one person, for such sums as any person embraced within the term mortgagor may individually owe to Bank, either on account, on commercial paper, for overdrafts, for money loaned, for renewal of notes, and upon any other obligation, whatsoever may be the nature of the same or howsoever the same may be contracted by any such person individually with the Bank, including all obligations of any such person jointly with any other person or persons as co-partners, sureties, guarantors or otherwise, co-partners, sureties, guarantors or otherwise, together with the interests upon such claims.

The future advance clause, which allows the borrower to borrow additional sums at a future time, secured under the same instrument and by the same real property states,

"Upon request of the mortgagor, the mortgagee may hereafter, at its option, at any time before full payment of this mortgage, makes further advances to the mortgagor, and any such further advance with interest, shall be secured by this mortgage."

Additionally, the promissory note contained a dragnet clause which states,

"All security given herein shall be for the payment of this contract, and all other liabilities and obligations now or hereafter owned by makers to Bank, whether joint, several, contingent, matured or unmatured."

Subsequent to the execution of the mortgage and Bass Note, Mr. and Mrs. Bass executed a commercial promissory note on behalf of C.A.T. (C.A.T. Note 2) in the amount of $55,581.06. The security for this loan was stated as "signed invoices on inventory covered in Letter of Credit $1258." This Note was made on December 1, 1983, and was due on December 12, 1983. On December 6, 1983, Mr. and Mrs. Bass executed a note for $16,000.00 (C.A.T. Note 3) which was secured by accounts receivable and inventory.

The question for the Court is whether the mortgage on the Basses' real property extends to C.A.T. Note 1, executed prior to, the mortgage and/or to C.A.T. Notes 2 and 3, which were executed after the mortgage.

The first inquiry is whether the mortgage can secure C.A.T. Note 1, which preexisted the mortgage, by virtue of the dragnet clause in the mortgage.

The guiding principle in construction of a dragnet clause is the determination of the intent of the parties in view of the particular circumstances and language employed in the mortgage. *Whitlock v. Max Goodman & Sons Realty, Inc.*, 21 B.R. 512 (Bkrtcy.D.Mass.1982). Dragnet clauses which purport to secure all debts, past, present and future, between parties to a security agreement are generally disfavored and must be strictly construed. *Federal Deposit Insurance Corp. v. Peterson, (In re Peterson)*, 27 B.R. 95 (Bkrtcy. M.D.Fla.1983), *Uransky v. First Federal Savings & Loan Association*, 684 F.2d at 756. In this case, we must look at the intent of the parties as evidenced by (1) the mortgage and (2) the nexus between the mortgage and C.A.T. Note 1.

The mortgage was executed on December 10, 1982 by the Basses in their personal capacity. This mortgage, in favor of First National Bank, was executed nearly one month after the promissory note between C.A.T. and the Bank was executed. If the intent of the Bank and the Basses was to use the mortgage on the Bass residence as security for C.A.T. Note 1, the Bank could have mentioned the existing note in the mortgage document. They did not do so. Although the mortgage contains the general dragnet clause language, it does not manifest an intent to include C.A.T. Note 1., which was secured by accounts receivable, inventory and parts from the C.A.T. business.

The Supreme Court of New Mexico has addressed the issue of the limits of a dragnet clause, and decided that "[b]ecause potential lenders rely upon the recorded mortgages to determine whether to make other loans there must be certainty as to the

extent to which a mortgage encumbers property." *New Mexico Bank and Trust Company v. Lucas Brothers*, 92 N.M. 2, 582 P.2d 379 (1978).

The Bass mortgage does not give this type of notice to others nor does it manifest the intent of the parties to do so. However, if the connection between C.A.T. Note 1 and the Bass mortgage is sufficiently related, this court could give effect to the dragnet clause in spite of the lack of evidence of actual expressed intent.

C.A.T. Note 1 was for business purposes, and was secured by the accounts receivable, parts and inventory of the business. It was signed by the Basses in their corporate capacity. The fact that Note 1 was executed in their corporate capacity is evidenced by the personal guarantees which were required to be executed at the same time by the Basses. The mortgage on the Bass residence, on the other hand, was a personal obligation. Although the proceeds of the Bass Note may have been used for business purposes, it was a personal note, with a personal mortgage as security.

■ Thus, it appears from the evidence presented that the dragnet clause in the Bass mortgage was not intended to secure C.A.T. Note 1, and this Court will therefore not allow the mortgage to secure this note.

The second inquiry for the Court is whether the Bass mortgage, by virtue of the future advance clause, secures C.A.T. Note 2 and Note 3.

The validity and enforceability of future advances clauses has been settled in New Mexico by the Legislature. *In re Dan K. Davis*, 44 B.R. 88 (1984). N.M.S.A. § 48–7–9 (1978) requires that for a mortgage upon real property to secure future advances, "the lien of such mortgage *shall not exceed at any one time the maximum amount stated in the mortgage.* (emphasis added) *Id.*

The Bass mortgage states that it "secures a Promissory Note of even date." The Promissory Note is in the amount of $19,748.24. Therefore, the lien of the mortgage shall not exceed that maximum amount of $19,738.24. We see no reason to conclude that the parties did not intend the mortgage provision to operate as written. *In re Dan K. Davis, supra.*

■ Therefore, the mortgage secured C.A.T. Notes 2 and 3 only insofar as the total lien does not exceed the amount of $19,748.24. The remainder of the Bank's claims shall be deemed to be unsecured.

The secured first mortgage of Albuquerque Federal Savings and Loan is $45,500.00 and the debtor continues to make payments on that obligation. The house is worth at least $70,000.00. First Interstate Bank having a secured claim in the amount of $19,748.24, is adequately protected until a discharge can be entered in this case.

This memorandum opinion constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.

An appropriate order shall enter.