582 P.2d 379

**NEW MEXICO BANK AND TRUST COMPANY, Plaintiff-Appellant,**

v.

**LUCAS BROTHERS, a partnership composed of Raymond A. Lucas and Johnny T. Lucas, Raymond A. Lucas, Johnny T. Lucas and Louise V. Lucas, husband and wife, Liberty National Bank and Nathan G. Howry, Defendants-Appellees.**

**No. 11511.**

Supreme Court of New Mexico.

July 26, 1978.

Rehearing Denied Aug. 8, 1978.

Heidel, Samberson, Gallini & Williams, Jerry L. Williams, Lovington, for plaintiff-appellant.

Sanders, Templeman & Crutchfield, C. Barry Crutchfield, Lovington, for defendants-appellees.

## OPINION

PAYNE, Justice.

New Mexico Bank & Trust Company filed a mortgage foreclosure action on several notes. The defendants included the Lucas Brothers partnership, maker of the notes, and Liberty National Bank. Liberty counterclaimed to foreclose a mortgage it held on the property. The trial court granted judgment in favor of the New Mexico Bank in the amount of $110,855.77 and in favor of Liberty in the amount of $32,169.30. It further ruled that $5,000 of the New Mexico Bank judgment would constitute a first lien on the real estate superior to Liberty's lien. We are asked to review the priorities.

A chronology of the loans is helpful in understanding the issues:

| Loan | Amount | Date of filing real estate mortgage | Comment |
|------|--------|-------------------------------------|---------|
| A. N.M. Bank | $15,000 | 12-29-69 | |
| B. N.M. Bank | $20,000 | 2-9-70 | Paid off "A" but mortgage for "A" was not released. |
| C. N.M. Bank | $25,500 | | No mortgage filed on real estate. Dated 4-1-73 and secured by personal property. |
| D. N.M. Bank | $15,700 | | No mortgage filed on real estate. Dated 5-10-73 and secured by personal property. |
| E. N.M. Bank | $9,000 | | No mortgage filed on real estate. Dated 8-30-73 and secured by personal property. |
| F. Liberty | $35,959.31 | 9-20-73 | |
| G. N.M. Bank | $52,226 | | Total from five different loans all made after the date of Liberty's mortgage "F." |

On the date of the Liberty loan and mortgage Lucas Brothers owed a balance of $55,200 to New Mexico Bank. The real estate mortgages securing New Mexico Bank loans "A" and "B" each contained what is referred to as a "dragnet clause." The clause provides that the real estate will secure,

[t]he payment of all loans, advances, indebtedness or liabilities, whether now

existing or which hereafter come into existence, whether matured or unmatured, whether direct or indirect, absolute or contingent, primary or secondary, including any extensions and renewals thereof, and however acquired by mortgagee, due the mortgagee from the mortgagor.

After this action was commenced Lucas Brothers filed bankruptcy. It did not answer the complaint and default judgment was entered against it. The personal property pledged as collateral was sold and the amount credited to New Mexico Bank.

The trial court found that at the time Liberty made its loan the outstanding balance on the New Mexico Bank loan directly secured by the real estate mortgage was $5,000. On the basis of that finding, it ruled that New Mexico Bank was entitled to priority on only that amount plus interest, costs and attorney's fees. The trial court further found that Liberty was entitled to second priority for the full amount of its claim. The court then held that all other monies loaned by New Mexico Bank were secured by a lien on the property which was inferior to Liberty's lien.

The issue on appeal is whether the trial court correctly set the priority between the parties. New Mexico Bank argues that the trial court erred in one of two ways:

(1) It claims that under the "dragnet clause" of the mortgage all subsequent loans were secured by the mortgage and relate back to the date of the original loan. It maintains that its agreement with the Lucas Brothers was to finance a "hog-feeding operation." Thus all the loans made pursuant to this agreement were secured by the original mortgage.

(2) In the alternative, it contends that even if not entitled to priority on the entire amount it is entitled to priority on the total amount loaned to Lucas Brothers prior to the Liberty loan.

Liberty maintains that the trial court correctly ruled that the loans made subsequent to the $20,000 loan of January, 1970 were unrelated to the purpose of that loan and that any subsequent loans did not relate back to the original date.

The issue considered in this appeal has been resolved in future cases by the Legislature through the enactment in 1975 of § 61–7–9, N.M.S.A.1953 (Supp.1975), which provides as follows:

Every mortgage or other instrument securing a loan upon real estate and constituting a lien, or the full equivalent thereof, upon the real estate securing such loan, may secure future advances and the lien of such mortgage shall attach upon its execution and have priority from the time of recording as to all advances, whether obligatory or discretionary, made thereunder until such mortgage is released of record; Provided, that the lien of such mortgage shall not exceed at any one time the maximum amount stated in the mortgage.

Although not controlling in the present case, we are persuaded by the rationale and the logic of the statute.

The importance of allowing open-ended lending made possible by the "dragnet clause" is well recognized. *First Nat. Bank of Guntersville v. Bain*, 237 Ala. 580, 188 So. 64 (1939); *Smith Eng. & Const. Co. v. United States Fid. & Guar. Co.*, 199 So.2d 302 (Fla.Dist.Ct.App.1967); *Estes v. Republic National Bank of Dallas*, 462 S.W.2d 273 (Tex.1970). However, in lending money secured by property, recording statutes provide for notice to other potential lenders and indicate the upper limits of that financing. § 71–2–1, N.M.S.A.1953 (Repl.1961). Because potential lenders rely upon the recorded mortgages to determine whether to make other loans there must be certainty as to the extent to which a mortgage encumbers property. It would defeat the purpose of recording to allow "dragnet clauses" to extend to the bounds argued by appellants.

In the present case the trial court found that the first mortgage given by Lucas Brothers was paid off by the proceeds from the second loan. There is substantial evidence to support the finding. When the underlying obligation was discharged, New Mexico Bank had the obligation of releasing the mortgage. § 61–7–4, N.M.S.A.1953 (Repl.1974).

The validity of the second mortgage given by Lucas Brothers to New Mexico Bank is not questioned. The face amount of the mortgage was $20,000 and it contained a "dragnet clause." Liberty had notice of that mortgage and of the "dragnet clause." We, therefore, hold that New Mexico Bank's lien has first priority in the real estate in the amount of $20,000 plus costs, interest and attorney's fees instead of the $5,000 allowed by the trial court. We affirm the trial court's ruling that the Liberty lien has second priority in the amount of $28,144.82 plus costs, interest and attorney's fees. New Mexico Bank is entitled to a third priority lien on the real estate in the amount of the balance of the money owed to it by Lucas Brothers.

We affirm the decision of the trial court except as to the amount of New Mexico Bank's first lien. The case is remanded for the entry of an appropriate order.

IT IS SO ORDERED.

SOSA and FEDERICI, JJ., concur.