HUNTINGTON NATIONAL BANK OF COLUMBUS, APPELLANT, *v.* TREASURER OF FRANKLIN COUNTY ET AL., APPELLEES.

HUNTINGTON NATIONAL BANK OF COLUMBUS, APPELLANT, *v.* SO-RICH BUILDING, INC. ET AL., APPELLEES.

(Nos. 82AP-1042 and -1050—Decided December 1, 1983.)

*Messrs. Porter, Wright, Morris & Arthur, Ms. Nancy Young, Mr. Thomas R. Sant, Messrs. White, Rankin, Henry, Morse & Mann, Mr. James D. Owen* and *Mr. Robert L. Herron,* for appellant.

*Mr. Michael Miller,* prosecuting attorney, for appellee Treasurer of Franklin County.

*Messrs. Knepper, White, Arter & Hadden, Mr. Roger L. Sabo* and *Ms. Denise M. Mirman,* for appellees Jess Howard Electric Co. and Concrete Construction Co.

*Messrs. Karam & Feinstein* and *Mr. Timothy G. Crowley,* for appellee Donald J. McDonnell, d.b.a. McDonnell Ceilings.

*Messrs. Bricker & Eckler, Mr. John W. Cook III* and *Mr. John F. Birath, Jr.,* for appellee Republic Buildings Corp.

*Mr. Richard L. Kohn,* for appellee Three C's Lumber & Supply Co.

*Messrs. Kincaid, Palmer & Randall* and *Mr. Dean W. Palmer,* for appellees Anderson Concrete Corp., Comery Sprinkler Co., Monet, Inc., Concrete Construction Co., Steelcraft Corp., Hathaway & Ferguson, Inc., Steel Door, Inc., and Jess Howard Electric Co.

*Messrs. Elliott & Barone* and *Mr. Jerry E. Elliott,* for appellee Drywall Interiors, Inc.

*Mr. Bruce A. Hyslop,* for appellee John F. Eaton.

*Mr. Mark Decker,* for appellee Green King Co., Inc.

NORRIS, J. Plaintiff Huntington National Bank of Columbus ("Huntington") appeals from the decisions of the trial court finding certain mechanic's liens valid and granting them priority over its mortgages in a distribution of proceeds in foreclosure actions. These cases have been consolidated for the purpose of argument and disposition.

This controversy arose out of the construction of a warehouse and office building for So-Rich Sales & Services. In September 1975, So-Rich contracted with Luburgh Construction Company to perform demolition, clearing, earth moving, and grading work on the building site. Luburgh began its work on September 15, 1975, and finished on October 9.

So-Rich obtained a loan from Huntington to finance construction of the building. As security for the loan, So-Rich executed two mortgages, one filed on October 17, 1975, and the other on October 22.

Subsequent to the filing of the mortgages, So-Rich entered into contracts with various companies for materials and labor related to the construction of the warehouse. The contractors and materialmen performed work and supplied materials, and attempted to perfect mechanic's liens after they failed to receive payment from So-Rich.

Huntington foreclosed its mortgages. At trial, the mechanic's liens of eight of the lienors were rejected as not being properly perfected. The trial court found that six of the liens were valid and had priority over Huntington's mortgages because the work done by Luburgh prior to October 17, 1975 constituted "commencement of construction" within the meaning of R.C. 1311.13(B).

Huntington raises six assignments of error:

"1. The trial court erred in holding that commencement of construction took place prior to recordation of Huntington National Bank's mortgages so as to give appellees' alleged mechanic's liens priority over the mortgages.

"* * *"

In its first assignment of error, Huntington quarrels with the trial court's application of only one portion of R.C. 1311.13—its interpretation of the meaning of the term "commencement of * * * construction" within the context of the circumstances of this case. The relevant portion of the statute reads as follows:

"(B) Such liens shall be preferred to all other * * * liens * * * which shall either be given or recorded subsequent to the commencement of said construction, excavation, or improvement."

Because Ohio courts have assumed that one of the purposes of the "commencement" provision of the statute is to give notice of potential lien rights to those who would do business with the landowner, the question to be resolved under the circumstances of this case is whether Luburgh's work had progressed to the point that a person examining the premises would have been placed on notice that he was observing the beginning of a structure. This might well be denominated a "visibility" test—whether the work performed had produced visible results which were sufficient to make it reasonably apparent to a person examining the site that the construction, excavation, or improvement had actually commenced. See *Rider* v. *Crobaugh* (1919), 100 Ohio St. 88; *Ohio Savings Assn.* v. *Bell* (1926), 25 Ohio App. 84. In order for the work to be deemed the commencement of construction, it must form a part of the work necessary for the construction and be of a nature that can afterward be considered a component part of the structure. *North Shaker Boulevard Co.* v. *Harriman Natl. Bank* (1924), 22 Ohio App. 487; see, also, *Fryman* v. *McGhee* (1958), 108 Ohio App. 501 [9 O.O.2d 488].

The trial court and the parties have all cited our decision in *Sears, Roebuck & Co.* v. *J-Z Realty Co.* (Dec. 28, 1978), Franklin App. No. 78AP-356, unreported, as sup-

porting their positions. In that case, we applied the test mentioned above and noted that the work needs to have progressed to a point beyond that indicating that a building might be placed on the site in the near future. In *Sears,* the land had been cleared of brush and surveying stakes had been driven, and we concluded that this work amounted only to preparation of the site for construction and fell short of the evidence needed to establish that construction had commenced.

In this case, the trial court stated its view of the evidence as follows:

"* * * [I]t must be decided at what point, if at all, the work of earth-moving performed by the Luburgh Construction Company changed from preparation to construction.

"It is the Court's opinion, from the evidence in this case, that the work of removal of the house and other buildings on the site, removal of trees and brush, filling of swale and low areas and construction of a sound barrier ridge were all site preparation and not construction.

"* * * [A dirt pad] was constructed by the Luburgh Company, according to several witnesses; one which supports the concrete slab floor of the building and is incorporated into the completed structure. There is some discussion * * * concerning compaction testing of the area of the dirt pad. The fact of such testing neither proves nor disproves the existence of such a pad, but lends credibility to the assertion by defendants that the area tested was most certainly that upon which the stability of the eventual building was to depend. Such tests would be irrelevant to the state of the ground before the work of the Luburgh Company was performed. The Court therefore finds that a dirt pad was constructed, that it was done before plaintiff's mortgage lien accrued and that, under Section 1311.13(B) of the Ohio Revised Code, the mechanic's liens herein found to be valid are entitled to priority over plaintiff's mortgage lien."

The trial court's factual findings, concerning the work performed on the site, are supported by evidence in the record. Those facts are distinguishable from those in *Sears.* According to the trial court's findings, the site had been cleared, the ground had been graded by high points being cut down and depressions filled, and a "pad" to receive the concrete slab upon which the buildings would stand had been constructed above grade from compacted earth. The trial court carefully followed our decision in *Sears,* separating out work which amounted to site preparation from that which constituted commencement of construction. Because there was evidence that the pad was tailored to and formed an essential part of the building's foundation, and that upon completion of Luburgh's work it was in appearance slightly larger than the rectangular building it was to receive and was raised to a height substantially above the adjoining highway and the areas planned for parking in the front and truck loading in the rear, the trial court was warranted in concluding that the work constituted the commencement of construction of the building. This is not to say that there was not evidence which would have warranted the drawing of a contrary conclusion by the trial court—only that an appellate court will not reverse where the trial court's conclusion is supported by some competent, credible evidence. *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261].

Accordingly, the first assignment of error is overruled.

*Judgment accordingly.*

MOYER, J., concurs.

WHITESIDE, P.J., dissents.

WHITESIDE, P.J., dissenting. Finding the opinion of the majority herein to be diametrically opposed to that reached by this court in *Sears, Roebuck & Co.* v.

*J-Z Realty Co.* (Dec. 28, 1978), Franklin App. No. 78AP-356, unreported, which, although not binding precedent, correctly states the applicable law, I must respectfully dissent. As this court noted in *Sears*: "[P]reparation of the land for construction of a building is insufficient to constitute the commencement of construction under mechanic's liens laws." The trial court found, and this court now holds, that such preparation constitutes commencement of construction if the preparation of the land is such that the preparation includes a fill which is compacted sufficiently to support the weight of the building. See Annotation, What Constitutes "Commencement of Building or Improvement" for Purposes of Determining Accrual of Mechanic's Lien (1965), 1 A.L.R. 3d 822.

The issue presented is construction and application of R.C. 1311.13, which reads in pertinent part:

"Liens under sections 1311.01 to 1311.24, inclusive, of the Revised Code are effective from the date the first labor is performed, or the first machinery, materials, or fuel is furnished by the contractor under the original contract * * *. * * * [S]uch liens take priority as follows: "* * *

"(B) Such liens shall be preferred to all other titles, liens or encumbrances which may attach to or upon such construction, excavation, machinery, or improvement, or to or upon the land upon which they are situated, which shall either be given or recorded subsequent to the commencement of said construction, excavation, or improvement."

Plaintiff bank has made no claim under R.C. 1311.14. The first prerequisite for application of R.C. 1311.13 is that there be an "original contract," with respect to which labor is performed or materials or machinery are furnished. Thus, the commencement of construction with which we are concerned must be construction under the "original contract" contemplated by R.C. 1311.13. The trial court inconsistently held that the Luburgh contract both was and was not the original contract within the contemplation of R.C. 1311.13. There is no dispute but that no other contract was entered into for construction of the improvement until after the recording of plaintiff's mortgage.

The Luburgh contract reads simply:

"We the undersigned agree to move 15,000 yards of earthen material for So-Rich Building, Inc., located at 3-C Highway and Rt. 161, Columbus, Ohio, for the sum of $9,700.00.

"Any additional material is to be moved at the rate of $35.00 per hour per tractor, $35.00 per hour per pan. The sum shall not exceed $10,800.00.

"We further agree to wreck, clear and remove all resulting debris for the maximum sum of $1,200.00."

The trial court expressly found that work under this contract consisting of "* * * removal of the house and other buildings on the site, removal of trees and brush, filling of swale and low areas and construction of a sound barrier ridge were all site preparation * * *." The trial court's confusion, however, arises from the labeling of the fill placed and compacted for the purpose of providing a subgrade for the building to be constructed as a "dirt pad." Basically, the evidence indicates that Luburgh performed only site preparation work; however, part of the site preparation was the leveling of the land by removing fill from one area and placing it in another. In one area, however, a portion of the premises was elevated two or three feet above the surrounding area. There is no clear indication from the evidence, however, as to the slope of this fill, although the utilization of the term "dirt pad" immediately gives rise to the image of an abrupt ninety-degree rise from the surrounding area. There is no evidence, however, that this is the case, and what plans there are do not so indicate. Defendant's Exhibit B-2 indicates that the elevation west of

the location where the building was to be constructed was equal to or higher than the so-called pad; whereas, the elevation to the east was lower, sloping down to approximately a three-foot difference.

It is undisputed, however, that, in fact, Luburgh performed the work of site preparation for construction of the building, including the subgrade of the actual building location which necessarily was filled and compacted to a specified compaction. Nothing further was accomplished by Luburgh or any other contractor at that point, and Luburgh's contract was completed. Unfortunately, the plans, although originally dated September 9, 1975, were revised on two occasions; one on October 9, 1975, immediately after Luburgh finished his contract, and the other on October 31, 1975, after the recording of plaintiff's mortgage lien. The evidence is not clear as to what changes were made on the plans by these two revisions. There is no dispute, however, but that Luburgh's work consisted only of site preparation, not construction of the actual building structure. In other words, Luburgh performed only work of preparing the land itself for the eventual construction of the building, and in no way constructed the building itself. It is quite clear that, after Luburgh's work, excavation was necessary for the footers, which had to be constructed. A four-inch gravel course would be laid to bring the surface to the finish grade and that then a six-inch concrete slab would be placed on top of the gravel supported by the footers, as well as by the ground itself. Likewise, it is undisputed but that the plans for construction of the building were not approved for building permit purposes until after the recording of plaintiff's mortgage lien and that the building permit itself was not issued until November 18, 1975.

The trial court correctly stated the rule of law announced in Sears, supra, that: "[P]reparation of the land for construction of a building is insufficient to constitute the commencement of construction under mechanic's liens laws." However, the trial court then misconstrued the issue before it, stating: "[I]t must be decided at what point, if at all, the work of earth-moving performed by Luburgh Construction Company changed from preparation to construction." The court then recognized that neither the Luburgh contract nor the field sheets mentioned a dirt pad, but then stated: "Yet one was constructed by the Luburgh Company, according to several witnesses, one which supports the concrete slab floor of the building and is incorporated into the completed structure." Obviously, the ground underneath the building must, of necessity, support the building. Whether one calls the ground a dirt pad or merely the ground makes no difference, the result is the same. What the trial court left out was the fact that footers had to be constructed and a four-inch gravel base placed for support of the concrete slab. The slab did not lie directly upon the so-called dirt pad. As this court held in Sears, supra, preparation of land for construction of a building does not constitute commencement of construction of that building within the contemplation of R.C. 1311.13. Site preparation means preparing the land itself for the eventual construction. Labeling part of that site preparation as being "a dirt pad" does not change its nature from site preparation.

Here, it is indicated by plaintiff's Exhibit 5 and the testimony of the engineer in charge of that work that the building itself had not been staked out at the time of the recording of the plaintiff's mortgage lien. Thus, there was even less indication that a building was to be built in the immediate future than existed in Sears since, in that case, the surveyor stakes had been set prior to the recording of the mortgage. Here, they were set after such recording. In addition, the engineer employed by defendant So-Rich executed an affidavit on October 23, 1975,

that no work had commenced upon the construction project, which was used for title insurance purposes. So-Rich certified in connection with the mortgage that no work had been commenced. The engineer in question, who was employed by So-Rich to set the stakes for the building preliminary to construction, testified that this was not done until October 28, 1975, and that no construction had taken place prior to that time. Although the pad had been constructed, he stated:

"Well, it's not a normal procedure to stake it, the building, until the pad is constructed. The construction of a pad takes too much area to get the stakes close enough to the building to do much good, so the building stake is not put in until the pad is completed."

The second paragraph of the syllabus of *Summer & Co.* v. *DCR Corp.* (1976), 47 Ohio St. 2d 254 [1 O.O.3d 146], states that:

"A purchase money mortgage recorded subsequent to the time of the visible commencement of work on the mortgaged premises is subordinate to any mechanic's lien properly perfected for the labor and material furnished prior to the recording date."

This is in accord with the earlier case of *Rider* v. *Crobaugh* (1919), 100 Ohio St. 88, the fourth paragraph of the syllabus of which states:

"If it is reasonably apparent to the mortgagee that the construction, excavation or improvement had not actually and obviously commenced when the mortgage was filed for record, then such mortgage would retain priority."

In both instances, it must appear the construction had "obviously commenced." The trial court's conclusion that a dirt pad had been constructed during the site preparation is not dispositive, the construction of such pad not being disputed but, rather, the dispute being one of law as to whether the existence of such a pad makes it obvious that construction of the building itself has commenced.

Even assuming that in some instances the construction of the dirt pad for a building would constitute commencement of construction within the contemplation of R.C. 1311.13, such conclusion cannot be reached in this case. At the time of the recording of the mortgage, the existence of the dirt pad would not have given notice to the mortgagee of commencement of construction in light of: (1) the stability of the dirt pad for eventual construction was not readily apparent since test borings were necessary to determine stability; (2) the building had not been staked; (3) no contract for construction of the building itself had been entered into; (4) the plans were revised after that date, namely, on October 31, 1975; (5) the plans had not been approved, nor a building permit issued, which was only issued on November 18, 1975; (6) the engineer employed to stake the building certified by affidavit that construction had not commenced; (7) the excavation for the footers had not commenced; (8) additional fill was required to bring the ground to the finished grade, and (9) So-Rich covenanted that the construction had not yet commenced.

Obviously, the stability of any building depends upon the stability of the ground upon which it rests. The evidence indicates that, where no basement is to be dug, a dirt pad must be prepared as part of site preparation. In this instance, construction of the dirt pad necessarily involved fill, which then is compacted to a specified degree of compaction. However, commencement of the building does not occur until there is excavation for the footers, which are a necessary prerequisite for the construction of the building in question. Most witnesses referred to the dirt pad as being the subgrade, rather than the finished grade. As indicated by the evidence, additional fill was necessary, consisting in this instance of a four-inch gravel course, rather than additional dirt. Construing the evidence most strongly in favor of defen-

414

dants, no other conclusion can be reached from the totality of the evidence herein involved but that it was not obvious that construction of the building had commenced at the time when the mortgage was filed for record. Accordingly, under the rule of *Rider* and *Summer,* the mortgage lien takes priority over subsequent mechanic's liens. See, also, *Wayne Bldg. & Loan Co.* v. *Yarborough* (1967), 11 Ohio St. 2d 195 [40 O.O.2d 182]. Accordingly, the first assignment of error should be sustained.

\* \* \*

Therefore, the first assignment of error should be sustained.