741 P.2d 826

**VALLEY FEDERAL SAVINGS & LOAN ASSOCIATION, formerly Valley Savings & Loan Association, Plaintiff-Appellant,**

v.

**T–BIRD HOME CENTERS, INC., et al., Defendants-Appellees.**

No. 16674.

Supreme Court of New Mexico.

Aug. 5, 1987.

Rehearing Denied Sept. 17, 1987.

Simons, Cuddy & Friedman, Charlotte H. Hetherington, Santa Fe, for appellant.

Charles W. Imke, Hobbs, for appellees.

## OPINION

SOSA, Senior Justice.

Plaintiff-Appellant Valley Federal Savings & Loan Association (Valley Federal) appeals the judgment granted by the trial court to Defendant-Appellee T–Bird Home Centers, Inc. (T–Bird). Valley Federal's complaint in foreclosure was filed on August 26, 1983 naming several other defendants besides T–Bird, including the principle defendants, a married couple named Johnson, who had been constructing a home in Lea County, and who eventually defaulted on their debt to Valley Federal. Valley Federal had loaned the Johnsons $170,000 to construct their home, and had taken back a first mortgage securing payment of the debt. Valley Federal recorded the mortgage on October 8, 1982.

The other defendants were subcontractors who had at various times filed claims of lien against the subject property. On June 27, 1986 the trial court issued a stipulated partial judgment of dismissal, settling the claims of all the subcontractors except T–Bird. T–Bird had begun work on the Johnson's home after October 8, 1982, and claimed the same priority as to the payment of proceeds from the foreclosure sale as accorded to two subcontractors who had begun work *before* October 8, 1982. Judgment in favor of T–Bird was rendered by the trial court, sitting without a jury, on April 4, 1984. For the reasons stated below, we affirm.

## FACTS

Prior to recording the Johnsons' mortgage, Valley Federal sent its agent to the Johnsons' property to determine if any construction work had begun. He conducted an "in-car" inspection, in that he did not get out of his car and walk around the site. Likewise, on the day before the mortgage

was recorded, an agent for the title company chosen to write the title insurance policy conducted an in-car inspection. Neither inspector saw from his car evidence of prior construction on the site, although two subcontractors (other than T–Bird) were able to substantiate at trial that they had begun work on the property before either inspection. One subcontractor had poured in concrete footings, which had apparently been overrun by weeds by the time the inspections were made, and the other subcontractor had installed a metal post to connect with the utility company's underground electric line. The "drive-by" inspectors either had not taken note of the second subcontractor's work or had assumed that the post had been put there by the utility company.

On May 14, 1984 the Johnsons' property was sold in foreclosure and the proceeds of the sale were distributed to Valley Federal and all defendants except T–Bird, according to certain stipulations which are not relevant here. T–Bird refused to enter into the stipulated partial judgment of dismissal because it insisted on being treated as a subcontractor with a claim of lien prior to that of Valley Federal. The central issue before us, therefore, is whether T–Bird should be accorded the same priority as two subcontractors who began work on the job site *before* the mortgage was recorded, even though it is undisputed that T–Bird began its own work *after* the mortgage was recorded.

### Construction of NMSA 1978, Chapter 48, "Liens and Mortgages"

Our decision in this case revolves around the construction which is to be given to applicable sections of New Mexico's statutory law on liens and mortgages, and that construction in turn depends upon an understanding of the legislative history underlying the enactment of NMSA 1978, ch. 48, and in particular, NMSA 1978, Sections 48-2-5 and 48-2-13, the two principle sections of our law upon which the parties rely in their briefs on appeal.

The ancestor of our present law is Codified Laws of New Mexico (CLNM) 1897 Title XXIV—"Liens." Our present NMSA 1978, Section 48-2-5, "Preference over other encumbrances," dates back directly to the 1897 law, having passed through the intermediate stages of NMSA 1915, Section 3322, NMSA 1941, Section 63-205 and NMSA 1953, Section 61-2-5. Our present NMSA 1978, Section 48-2-13, [Rank of liens; order of payment.], has been passed down to us through NMSA 1915, Section 3329, NMSA 1941, Section 63-212 and NMSA 1953, Section 61-2-12. A comparison of the present law with each of its predecessors reveals that virtually nothing has been added to or subtracted from the original statute, as compiled in CLNM 1897.

Our present NMSA 1978, Section 48-2-5 reads:

The liens provided for in this article are preferred to any lien, mortgage or other encumbrance which may have attached subsequent to the time when the building, improvement or structure was commenced, work done or materials were commenced to be furnished; also to any lien, mortgage or other encumbrance of which the lienholder had no notice, and which was unrecorded at the time the building, improvement or structure was commenced, work done or the materials were commenced to be furnished.

Our present NMSA 1978, Section 48-2-13 reads:

In every case in which different liens are asserted against any property, the court in the judgment must declare the rank of each lien, or class of liens, which shall be in the following order, viz:

A. all persons other than the original contractors and subcontractor;

B. the subcontractors;

C. the original contractors.

And the proceeds of the sale of the property must be applied to each lien, or class of liens, in the order of its rank, and whenever, on the sale of the property subject to the lien, there is a deficiency of proceeds, judgment may be docketed for the deficiency in like manner, and with like effect as in actions for the foreclosure of mortgages.

Valley Federal contends that the words in the first section, "work done or materials commenced to be furnished" should be read in conjunction with Section 48–2–1, which defines a lien as "a charge imposed upon specific property, by which it is made security for the performance of an act." Valley Federal contends that the words "performance of an act" refer in this instance to T–Bird's providing labor and materials for the Johnsons' home, and that since such labor and material were provided after Valley Federal's recording of the Johnsons' mortgage, T–Bird should be held, for purposes of Section 48–2–5, to have "commenced" its work at such time as to make its lien subordinate to Valley Federal's mortgage.

T–Bird, on the other hand, argues that the words "work done or materials commenced to be furnished" in Section 48–2–5 refer to the initial work done by *any* laborer or supplier, and that T–bird's providing labor and materials should be tacked onto, or related back to, the date when such initial work was begun—in this case, before Valley Federal recorded its mortgage. T–Bird goes on to argue that by the language of Section 48–2–13 it is to be ranked with the two prior subcontractors, so that T–Bird and the prior subcontractors share pro rata in the proceeds of the foreclosure sale under Section 48–2–13(B).

We find T–Bird's argument persuasive because of the historical path which our present law followed from its inception to the present day. In CLNM 1897 Title XXIV was captioned simply "Liens." In Section 2238 of that law, the rank of lienors in the position occupied in the case before us by T–Bird and the other two subcontractors was to be determined by priority in time of filing, so that under the law as it existed in 1897, T–Bird and the other two subcontractors would not share in the proceeds of a foreclosure sale pro rata, but according to the dates on which their respective liens were recorded. In the 1915 compilation of the original law, Section 2238 was placed, not under the general heading "Liens," but under the particular heading "Innkeeper, etc.—Priorities," and under art. II, entitled "Artisans,

Landlords, etc." As the original passed into its 1941 version, it was placed under art. 3 captioned "Liens on Personal Property," and under the section captioned "Priorities." Likewise, in NMSA 1953 the pertinent law was placed under art. 3, "Liens on Personal Property," and under the section heading, "Priorities Between Liens." Finally, we reach our present law, NMSA 1978, art. 3, "Liens on Personal Property," and Section 48–3–10, "Priorities Between Liens."

Neither of the parties on appeal seems to have noticed this unique development of our law in which the general lien established by Laws 1897, Section 2238, establishing priority in time as the criteria for payment of lienors such as those in the case before us, evolved into an entirely separate branch of the law of liens—namely, into a section having to do only with liens on personalty. Thus liens such as the ones before us can now be determined only by Sections 48–2–5 and 48–2–13. As the court of appeals held in *Chessport Millworks, Inc. v. Solie*, 86 N.M. 265, 268, 522 P.2d 812, 815 (Ct.App.1974), "This provision [the 1974 version of CLNM 1897, Section 2238] pertains to priority between liens established by [today's Sections 48–3–1 through 48–3–28]; it does not apply to liens not covered by these sections." Therefore, insofar as liens attached to real property are concerned, a determination as to priority in time can be found only in Section 48–2–5. Once that priority is determined, one must look to Section 48–2–13 in order to see how the various lienors are to be ranked for purposes of disbursement of proceeds.

Looking at Section 48–2–5, we determine that T–Bird's lien is prior to that of Valley Federal. In doing so we conclude that the word "commenced" in that section refers to the date when *any* laborer or provider of material performed services on the Johnsons' home, so that T–Bird's liens may be tacked onto or referred back to the position of the liens filed by the two subcontractors who began their work before Valley Federal's mortgage was recorded.

Valley Federal argues against this construction of the statute, on the strength of *Stearns-Roger Mfg. Co. v. Aztec Gold Min-*

*ing & Milling Co.,* 14 N.M. 300, 93 P. 706 (1908), but that case was decided, not upon a comparative construction between what is today NMSA 1978, Sections 48–2–5 and 48–2–13, but upon a comparison between today's Sections 48–2–5 and 48–2–11. Nor is the cited case of *Kemp Lumber Co. v. Howard,* 237 F. 574 (8th Cir.1916) supportive of Valley Federal's position. There the court held that "the sections of the statute determinative of the issue are [CLNM 1897] 2228 and 2238 (NMSA 1978, Section 48–2–13 and Section 48–3–10) * * *.," and we have concluded above that the priorities referred to in Section 48–3–10 apply only to liens against personalty. Neither is the cited case of *House of Carpets, Inc. v. Mortgage Inv. Co.,* 85 N.M. 560, 514 P.2d 611 (1973) helpful to Valley Federal, because that case stands for the proposition that mortgage liens are to be protected against liens recorded after the commencement of any *subsequently* performed work (there being no work performed *prior* to the recording of the mortgage as here).

The parties are correct in stating that the case before us is one of first impression in New Mexico. In making our decision, we adopt what is the trend in other jurisdictions, namely, that the determination of the priority of a subcontractor's lien such as that filed by T–Bird here, *vis-à-vis,* that of a mortgage recorded after work has already commenced on the construction project, relates back to the date when *any* construction actually commenced. *See McConnell v. Mortgage Inv. Co. of El Paso,* 292 S.W.2d 636 (Tex.Civ.App.1955); *Barker's Inc. v. B.D.J. Dev. Co.,* 308 N.W.2d 78 (Iowa 1981); *Wahl v. Southwest Savings & Loan Ass'n.,* 12 Ariz.App. 90, 467 P.2d 930 (1970); *3190 Corporation v. Gould,* 163 Colo. 356, 431 P.2d 466 (Colo. 1967); and *Metropolitan Life Ins. Co. v. First Sec. Bank,* 94 Idaho 489, 491 P.2d 1261 (1971).

Once the priority between lienors is determined according to Section 48–2–5, one must look to Section 48–2–13 in order to determine the rank of lienors of the same priority. When payment from the proceeds of foreclosed real property is distributed to lienors of the same rank, it must be done *pro rata,* and without regard to the time in which liens of the same rank vested.

Valley Federal contends that such a rule as we adopt herein will work an unconscionable hardship on lending institutions, in that they can never be assured that a recorded mortgage will cut off the rights of subcontractors who·perform "late-arriving" work on construction projects which the lenders are funding. We disagree. In the first place, lenders such as Valley Federal could conduct authentic and diligent inspections of property covered by their mortgages, instead of the quasi-inspections of the present case, in order to determine precisely when construction has begun. Further, lending institutions could require owners or contractors to submit invoices from subcontractors directly to the lender, so that the lender could distribute payments on the note directly to subcontractors, thereby assuring that the owner or general contractor is properly allocating proceeds of the loan. And as a condition for working on the project, the lender could require laborers and materialmen to sign a waiver stating that in the event of any contest over proceeds from a foreclosure sale, the laborer's or materialmen's position is deemed to be subordinate to that of the lender, or that the date of commencement of any construction is deemed to be later than the date on which the lender recorded its mortgage.

Our ruling is to operate retrospectively, rather than prospectively. We hold that the trial court's judgment is affirmed; that T–Bird shall be paid, prior to any payments being made to Valley Federal, up to the full amount owing to T–Bird from the proceeds of the foreclosure sale. Further, we remand the case to the trial court with instructions to determine to what costs and attorney's fees, if any, T–Bird is entitled, both for the prosecution of the action below as well as for this appeal.

RANSOM, J., and W. JOHN BRENNAN, District Judge, concur.