784 P.2d 415

**PIONEER SAVINGS & TRUST, F.A.,**
Plaintiff–Appellee,

v.

**Barney RUE, Defendant–Appellant,**

v.

**STERLING HOMES–CARRIZO LODGE,
JOINT VENTURE, et al., Defendants.**

No. 17904.

Supreme Court of New Mexico.

Dec. 18, 1989.

O'Reilly & Wardlaw, P.C., Mel P. O'Reilly, Ruidoso, for appellant.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Joseph E. Roehl, Albuquerque, Sanders, Bruin, Coll & Worley, P.A., James L. Bruin, Roswell, Ronald G. Harris, Albuquerque, for appellee.

## OPINION

RANSOM, Justice.

Barney Rue appeals from the judgment of the district court awarding to Pioneer Savings & Trust, F.A., the proceeds of a mortgage foreclosure sale, and assessing costs against Rue. Rue and other contractors claiming preferential mechanic's liens on a Ruidoso condominium development were defendants in the foreclosure proceedings. Only Rue appeals. We affirm.

Rue is a dirt and paving contractor who obtained a paving contract for roads and parking lots in the Carrizo Lodge Condominiums project, which consisted of Phases I, II, and III. Pioneer loaned $3.891 million to the project developers with promissory notes being secured by two mortgages on the Carrizo Lodge Condominiums property. The first loan for $1.5 million was secured by a mortgage on Phases I, II, and III, which was executed on December 7, 1982, and recorded on December 9, 1982. The second loan for $2.191 million was made on May 31, 1983, and also was secured by the mortgage recorded on December 9, 1982,

pursuant to an advancements clause in that mortgage. A third loan for $200,000 was made on June 26, 1984, and was secured by a mortgage on the furniture, appliances, and other personal property in the Phase II condominiums. This second mortgage was recorded on June 28, 1984. The developers fell behind in their payments, and Pioneer brought an action to foreclose both mortgages against Phase II only.

In November of 1982, prior to the recording of either of Pioneer's mortgages, a sewer line was built along a utility easement that passed through part of Phase II as well as other areas of the Carrizo Lodge Condominiums property. Also present at that time on Phase II was a mobile home that extended partly into Phase I. The mobile home had been remodeled (for purposes unclear from the record) prior to the recording of either of Pioneer's mortgages. These improvements have significance in relation to the law that a mechanic's lien is preferred to a mortgage of which the lienholder had no notice, and which was unrecorded at the time work commenced. *See* NMSA 1978, § 48-2-5 (Repl.Pamp.1987). A subcontractor's lien relates back to the date when any construction actually commenced, even though that subcontractor's work commenced after the mortgage was recorded. *Id.; Valley Fed. Sav. & Loan Ass'n v. T-Bird Home Centers, Inc.*, 106 N.M. 223, 226, 741 P.2d 826, 829 (1987).

Rue asserted that he had a mechanic's lien on Phase II that enjoyed priority over Pioneer's mortgage because his mechanic's lien related back to the date of the sewer construction, or to the date of the mobile home remodeling. The district court found that no work was done on any of the Carrizo Lodge Condominiums prior to the recording of the mortgage on December 9, 1982, and, therefore, neither the sewer construction nor the mobile home remodeling was a starting point for the relation back of subsequent work. The district court also found Rue's mechanic's lien and those of other subcontractors invalid and not timely filed, and assessed Pioneer's costs against Rue and those other subcontractors.

We first address Rue's argument that the district court improperly allowed Pioneer to foreclose on the $2.191 million loan of May 31, 1983, a date clearly after the subcontractors' work began. That loan was secured by an advancements clause contained in the mortgage recorded on December 9, 1982. Rue asserts that, under NMSA 1978, Section 48-7-9 (Repl.Pamp. 1987), the mortgage cannot be allowed to secure an advance greater than the face amount of the mortgage. The statute reads:

> Every mortgage or other instrument securing a loan upon real estate and constituting a lien, or the full equivalent thereof, upon the real estate securing such loan, may secure future advances and the lien of such mortgage shall attach upon its execution and have priority from the time of recording as to all advances, whether obligatory or discretionary, made thereunder until such mortgage is released of record; provided, that the lien of such mortgage shall not exceed at any one time the maximum amount stated in the mortgage.

We read this statute to mean that the amount secured by the mortgage shall not exceed the maximum amount stated in the mortgage. Any excess would be unsecured. This is the interpretation given to the statute in *In re Bass*, 44 B.R. 113 (D.N.M.1984), and we agree. In that case, the amount of the advance in excess of the face amount of the mortgage was unsecured by that mortgage. Our interpretation of the statute also comports with *New Mexico Bank & Trust Co. v. Lucas Bros.*, 92 N.M. 2, 582 P.2d 379 (1978). In *Lucas*, Section 48-7-9 had been enacted but did not apply to the parties. This Court, however, found the rationale behind the statute persuasive and allowed the first secured lender to have priority over a subsequent secured lender only to the extent of the face amount of the first lender's mortgage (plus costs, interest and attorney fees). The first lender's prior interest did not include advances made under the advancements clause of the first lender's mortgage, since the clause in question did not

state a dollar amount of advances to be secured by the mortgage. *Id.* at 4–5, 582 P.2d at 381–82.

In this case, Pioneer's mortgage recorded on December 9, 1982, has a stated amount of $1.5 million. Under Section 48–7–9, therefore, that mortgage cannot secure more than $1.5 million, plus costs, interest, and attorney fees for collecting on the note. The district court found that Pioneer "purchased the property at the foreclosure sale at a price within the maximum amount stated in the mortgage of December 7, 1982, as filed of record on December 9, 1982, plus property [sic] allowable interest and costs." The appellate court will not substitute its judgment for that of the trial court as to the facts established by the evidence, so long as the findings are supported by substantial evidence. *Getz v. Equitable Life Assurance Soc'y of the United States,* 90 N.M. 195, 561 P.2d 468 (1977), *cert. denied,* 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977).

The court's finding is supported by substantial evidence. The amount of the advance secured by the mortgage recorded on December 9, 1982, was $1.5 million. Not including any interest due up to the day the complaint was filed, the $1.5 million sum represented sixty-three percent of the $2,361,293.72 sought in the complaint. Adding in further interest and attorney fees, the total amount owed to Pioneer as of the date of the foreclosure sale had risen to $2,898,216.60. The portion of that amount attributable to the $1.5 million, or sixty-three percent of the total, was $1,825,876. The foreclosure sale brought $1.8 million, not even enough to satisfy the indebtedness attributable to the $1.5 million secured by the mortgage recorded on December 9, 1982.[1] We affirm the application of the mortgage to the sums recovered.

Furthermore, we affirm the district court's findings that Rue's purported mechanic's lien did not enjoy priority over Pioneer's mortgage. We consequently do not reach any decision relative to the validity or timeliness of Rue's lien.

There was evidence introduced at trial to support the court's finding that no work actually was performed on any of the Carrizo Lodge Condominiums before Pioneer's mortgage was recorded. Ms. Fuller and Ms. Sluder, employees of Guaranty Abstract and Title, testified that, on December 9, 1982, they walked the boundaries of Phase II and that no construction had been done. In order for work to constitute a "commencement" such work must have been done on the "building, improvement or structure" upon which the lien is claimed. § 48–2–5; *Huntington Nat. Bank of Columbus v. Treasurer of Franklin County,* 13 Ohio App.3d 408, 469 N.E.2d 535 (1983); *Fryman v. McGhee,* 108 Ohio App. 501, 163 N.E.2d 63 (1958). Accordingly, work done that is not a part of the "building, improvement or structure" is irrelevant in assessing lien priorities. Mr. Collins, of Burke/Collins Surveyors, testified that the remodeling of the mobile home on Phase II was done in preparation for the sale of the land, prior to the construction of the Carrizo Lodge Condominiums. Michael Booth, a general contractor, testified that preliminary dirt work did not begin on Phase II until 1983.

There also was evidence that, not only had no work commenced on Phase II of the Carrizo Lodge Condominiums prior to the mortgage being recorded, none had been done on Phases I or III either. The previous owners of the Carrizo Lodge Condominiums property contracted for the sewer work as a condition of the sale of the property to the developers, not as a part of some construction project they were pursuing. Furthermore, Barry Burke, a consulting engineer, testified that the sewer work predated the construction on Phase II, and there was other testimony that the sewer work predated construction on Phases I and III also. From this evidence, the court could have concluded either that no work

---

1. Additionally, furniture, drapes, carpets and other personal property, which was the subject of the mortgage recorded on June 28, 1984, to secure a loan of $200,000, was sold at the foreclosure sale as part of the Phase II property. This would further reduce the amount of the proceeds of that sale attributable to the $1.5 million mortgage.

was done on Phase I, II or III prior to recording the mortgage, or that the work which was done was not part of the Carrizo Lodge Condominiums project.

Lastly, Rue appeals the district court's assessment of Pioneer's costs against him and two other defendants. SCRA 1986, 1–054 allows costs to be awarded to the prevailing party as a matter of course. The trial court has discretion in assessing costs, and its ruling will not be disturbed on appeal unless it was an abuse of discretion. *South v. Lucero*, 92 N.M. 798, 595 P.2d 768 (Ct.App.), *cert. denied*, 92 N.M. 675, 593 P.2d 1078 (1979). Costs which have been held to be within the discretion of the court to award include those for depositions, *Mantz v. Follingstad*, 84 N.M. 473, 505 P.2d 68 (Ct.App. 1972); witness fees, *Prudential Insurance Co. of America v. Anaya*, 78 N.M. 101, 428 P.2d 640 (1967); transcript fees, *Dunne v. Dunne*, 83 N.M. 377, 492 P.2d 994 (1972); and special master's fees, *Pena v. Westland Development Co.*, 107 N.M. 560, 761 P.2d 438 (Ct.App.), *cert. denied*, 107 N.M. 413, 759 P.2d 200 (1988). In addition, filing fees, lis pendens, service of process and a receiver's fee are costs which are reasonably necessary and so within the discretion of the court. *Cf. Mantz v. Follingstad*, 84 N.M. at 481, 505 P.2d at 76. We find no abuse of discretion in the trial court allowing these costs to be assessed against Rue and the two other defendants.

Because we affirm the district court's ruling, we do not address appellee's cross-appeal for attorney fees, which appellee requested only in the event of a reversal.

IT IS SO ORDERED.

SOSA, C.J., and BACA, J., concur.