816 P.2d 1119

**FIRST INTERSTATE BANK OF TEXAS, a national banking association, successor-in-interest to Allied Bank of Irving, Plaintiff–Appellant,**

v.

**Merle HUTCHENS, d/b/a Hutchens Mining Company, Donner Plumbing & Heating and D & R Tank Company, Defendants–Appellees.**

No. 19444.

Supreme Court of New Mexico.

Sept. 5, 1991.

Kemp, Smith, Duncan & Hammond, Robert A. Johnson, Celia F. Rankin, Albuquerque, for plaintiff-appellant.

Sager, Curran, Sturges & Tepper, Christopher P. Bauman, Albuquerque, for defendant-appellee Donner Plumbing.

Crider, Calvert & Bingham, Carl A. Calvert, Albuquerque, for defendant-appellee Hutchens Mining.

Villella, Skarsgard & Noya, Charles J. Noya, Albuquerque, for defendant-appellee D & R Tank Co.

OPINION

SOSA, Chief Justice.

First Interstate Bank of Texas (the bank) appeals a judgment denying its motion for summary judgment. The bank had sought a judgment declaring that a mechanic's lien filed by appellee Merle Hutchens, d/b/a Hutchens Mining Co. (Hutchens), was invalid because Hutchens possessed no contractor's license to perform work for Western Gypsum Co., against which he filed a lien when it did not pay Hutchens for his services. On April 12, 1985, the bank's predecessor in interest had filed its mortgage encumbering the gypsum company's real property and mineral rights.

Hutchens filed his claim of lien on June 11, 1987. The bank seeks reversal of the court's ruling that Hutchens had a valid mechanic's lien and that this lien, by relating back to his commencement of construction on the gypsum mine in 1981, was prior to the bank's mortgage. The bank also appeals that portion of the court's judgment in which the court ruled that liens filed ·by appellees Donner Plumbing & Heating (Donner) and D & R Tank Co. (D & R) were likewise prior to the bank's mortgage. Donner filed its lien in June, 1987, and D & R filed its lien in July, 1987.

■ We reverse. As to appellant Hutchens, there was no proof in this case that Western Gypsum Company's mine was located on a "mining claim" as defined by the court in *Gray v. Pumice Stone Co.*, 15 N.M. 478, 488, 110 P. 603, 606 (1910) ("mining claim" means a portion of the public mineral lands of the United States). Hutchens, simply by performing labor in a mine, did not have a mechanic's lien made under NMSA 1978, Section 48–2–2 (Repl. Pamp.1987).

■ As for appellees Donner and D & R, they in effect ask us to extend the ruling in *Valley Federal Savings & Loan v. T–Bird Home Centers, Inc.*, 106 N.M. 223, 741 P.2d 826 (1987), to the facts of this case. We decline to do so. As Justice Ransom later summarized the holding of *Valley Federal*, "A subcontractor's lien relates back to the date when any construction actually commenced, even though that subcontractor's work commenced after the mortgage was recorded." *Pioneer Savings & Trust, F.A. v. Rue*, 109 N.M. 228, 229, 784 P.2d 415, 416 (1989). Justice Ransom further stated, "In order for work to constitute a 'commencement' such work must have been done on the 'building, improvement or structure' upon which the lien is claimed." *Id.* at 230, 784 P.2d at 417 (quoting NMSA 1978, § 48–2–5 (Repl. Pamp.1987))[1].

■ Donner and D & R are asking us to stretch *Valley Federal* farther than it can be stretched. Hutchens was not a contractor; he was a miner.[2] He dug gypsum from an open pit mine. He did not construct or improve any building the gypsum company owned. Nor were Donner and D & R involved in the same kind of enterprise in which Hutchens was involved. While Hutchens mined, they provided labor for pipes, valves and dryers at the gypsum plant.

This situation differs from *Valley Federal*, in which one subcontractor performed work on a construction project and later, after a mortgage had been recorded against the real estate on the project, another subcontractor began work on the same project. In contrast, in the present case, a miner mining gypsum and two other providers of labor (not "subcontractors" on a construction project) subsequently performed services unrelated to the mining enterprise. We will not allow the claims of the later workers to relate back to the date when the miner began his labor. Such was neither our intention nor purpose in *Valley Federal*. There we sought to protect subcontractors who expend labor on and add materials to a construction project upon which they work, even though severally they may begin their work at different times, some before and some after the date when a mortgage on the real property is recorded.

We reverse the court's judgment of August 17, 1990 and remand the case to the trial court to reestablish the priorities of the various recorded liens in this case based on the principles we have set forth herein. Because appellees in good faith, and perhaps with good reason, capably asserted an issue of first impression, we conclude that the bank should bear its own attorney fees for prosecuting this appeal.

This case is reversed and remanded to the district court for proceedings consistent with this opinion.

IT IS SO ORDERED.

MONTGOMERY and FRANCHINI, JJ., concur.

---

1. The same statute is at issue in the case at bar.

2. As such, Hutchens was not required to have a contractor's license, contrary to the bank's contention. *See* NMSA 1978, § 60–13–3 (Repl. Pamp.1989). The statute did not intend to define an open pit miner like Hutchens as a contractor who constructs, alters, repairs, installs or demolishes a "shaft, tunnel or mining appurtenance." § 60–13–3(A)(11). Section 60–13–3 tends to make the holding in *Salter v. Kindom Uranium Corp.*, 67 N.M. 34, 351 P.2d 375 (1960), obsolete.